[No. 13674.   In Bank. — February 14, 1891.]

# SAN DIEGO LAND AND TOWN COMPANY, RESPONDENT, v. GEORGE NEALE ET AL., APPELLANTS.

APPEAL — ORDER GRANTING NEW TRIAL — DISCRETION — CONFLICTING EVIDENCE. — An order granting a new trial will not be reversed, in the absence of a showing of an abuse of discretion, where the evidence is conflicting.

EMINENT DOMAIN — VALUE OF LAND — PLEADING — BURDEN OF PROOF. — In a proceeding to condemn land, it is the duty of the owner of the land to allege and prove its value, and the burden of proof as to the value is upon him.

ID. — ISSUE AS TO VALUE — OBJECTION ON MOTION FOR NEW TRIAL. — Where an action to condemn land proceeds to trial and judgment upon the assumption by both parties that the value of the land sought to be condemned is at issue, the owner cannot complain, upon the hearing of a motion for a new trial, that the court had no jurisdiction to hear or determine the question of value, for want of an issue of fact thereupon.

ID. — MARKET VALUE — MEASURE OF DAMAGES. — In proceedings for the condemnation of land, the present market value of the land is the measure of damages, and not its value in use to the owner or to the parties seeking to condemn it.

ID. — BENEFIT ARISING FROM PROPOSED IMPROVEMENT. — The benefit arising from the proposed improvement cannot be given in evidence, or considered as an element of the value of the land.

ID. — VALUE FOR SPECIAL PURPOSES — EVIDENCE. — The present value of the land for any special, prospective purposes to which it may be adapted, although it may never have been used therefor, including its present value for the purpose for which it is sought to be condemned, may be given in evidence, and taken into account as one of the elements tending to show its present market value; but is only to be considered as evidence bearing upon the ultimate fact of present market value, which is to be determined by the jury, and not as an independent measure of damages.

ID. — EXCLUSIVE OFFER OF PLAINTIFF TO PURCHASE. — The fact that the plaintiff is the only person who has offered to purchase the land for the special purpose for which it is sought to be condemned cannot defeat evidence of its value for that special purpose; but the demand of the plaintiff alone must not be considered exclusive of other considerations affecting the present market value of the land.

ID. — RESERVOIR SITE — PROXIMITY TO DAM OF PLAINTIFF. — The proximity as well as the remoteness of the land sought to be condemned as a reservoir site to the dam site of the plaintiff may be taken into consideration in estimating its market value.

ID. — SPECULATIVE PROFITS FROM SALE OF WATER — EVIDENCE. — In a proceeding to condemn land for a reservoir site, estimates of value, based upon speculative improvements, increase of population, extension of

water systems, and the profits which would result from the distribution and sale of the water, upon the assumption that the land is to be used in connection with plaintiff's reservoir, are not admissible in evidence.

Id. — Value to Plaintiff — Profits from Use of Land. — The compensation to be awarded the owner of the land condemned cannot be based upon the value of the property to the person or company in charge of the public use, nor by its necessities; and it is not proper to take into consideration the profits which may result from the use of the land, especially where they depend upon the expenditure of large sums of money in carrying out the contemplated enterprise.

Id. — Value of Land Taken in Connection with Plaintiff's Land. — The value of the land when used in connection with plaintiff's land cannot be taken as a criterion; nor can its adaptability for reservoir purposes be considered in connection with the dam site of the plaintiff.

Id. — Adaptability for Reservoir Purposes — Evidence. — Any facts showing the nature of the land taken for a reservoir site, and its adaptability for reservoir purposes, may be taken into consideration in estimating its value, including the area of the water-shed, and the amount of water, the fact that there is land irrigable from the reservoir, and that there are cities and towns which are supplied with water from wells which might be supplied therefrom.

Id. — Expert Evidence — Opinions as to Value — Examination of Witnesses. — The proper and safe course for the examination of witnesses who testify as to the value of the land sought to be condemned is to state their opinion as to the market value of the property, having regard to the existing business wants of the community, or such as may be reasonably expected in the near future, and support their estimates by a description of the property, giving its location, surroundings, and advantages for any particular use, if it have any. The value of the opinion given may be tested by cross-examination of the widest latitude.

Id. — Cross-examination — Opinion Previously Entertained. — It may be shown on cross-examination that a witness who gives his opinion as to the value of the property formerly entertained a different opinion.

Id. — Qualification of Witnesses to Give Opinion. — The opinions of witnesses who never saw the land until several years after the right to compensation and damages accrued are not admissible.

Id. — Opinion Based upon Incompetent Matter. — Where a witness bases his opinion entirely upon incompetent and inadmissible matters, or shows that such matters are the chief elements in the calculations which lead him to the conclusions, his testimony should be rejected.

Id. — Irrelevant Evidence. — The introduction of irrelevant evidence upon one side without objection does not justify the introduction of irrelevant evidence upon the other side.

Id. — Costs of Proceeding — Appeal — Discretion as to Costs. — The party seeking to condemn the land should pay all expenses attaching to the process, and it is a proper exercise of discretion to require such party to pay the costs of the trial, and of an appeal by the owner from an order granting the condemning party a new trial, though the order is affirmed.

APPEAL from an order of the Superior Court of San Diego County granting a new trial.

The facts are stated in the opinion of the court.

*Hunsaker, Britt & Goodrich, J. E. Deakin,* and *Deakin & Story,* for Appellants.

The court had no jurisdiction to grant a new trial of the issue as to the value of the land taken, as there was no allegation in the pleadings upon that subject, and if there were, it would be an immaterial one. (Code Civ. Proc., secs. 590, 656; *Cal. S. R. R. Co.* v. *S. P. R. R. Co.,* 67 Cal. 64.) It was competent for the experts to base their opinion as to the value of the land on pecuniary estimates, and figure calculations dependent upon the probabilities of the future, as, there being no similar properties, its market value was in fact its intrinsic or actual value. (*Boom Company* v. *Patterson,* 98 U. S. 403; *Little Rock and Fort Smith R. R.* v. *McGehee,* 41 Ark. 202; *Little Rock Junction R. R. Co.* v. *Woodruff,* 49 Ark. 381; 4 Am. St. Rep. 51.) So far as the market value was in fact affected by the knowledge of what was to be done, or of what was contemplated, the owner was entitled to it; and it was right and proper for a witness to take that fact into consideration on making his estimate as to the value of the property, and to state it as one of the reasons for his estimate. (*Cobb* v. *Boston,* 112 Mass. 181.) An owner in a condemnation action is entitled to lay before the jury and urge upon their consideration everything that in good faith he could lay before a private purchaser when seeking to make a trade with him. (*Little Rock Junction R. R. Co.* v. *Woodruff,* 49 Ark. 381; 4 Am. St. Rep. 51; *Boom Co.* v. *Patterson,* 98 U. S. 403; *Regina* v. *Brown,* L. R. 2 Q. B. 630.) The expert's opinion as to value was admissible, although based upon reasons entirely incompetent as evidence, as the incompetency of the reasons goes only to the weight of his opinion, and not to its admissibility. (*Dick-*

*enson* v. *Fitchburg*, 13 Gray, 556; *Razzo* v. *Varni*, 81 Cal.
289; *Washington* v. *Cole*, 6 Ala. 212; *Bedell* v. *Long Island
R. R. Co.*, 44 N. Y. 367; 4 Am. Rep. 688.)    Courts have
never been upheld in rejecting expert testimony.    (*Estate
of Carpenter*, 79 Cal. 386.)    If the order granting the new
trial is sustained, it should be modified so as to require
the company to pay all costs.    (Lewis on Eminent Do-
main, sec. 559; *Matter of New York, W. S. & B. R. R. Co.*,
94 N. Y. 287.)

*Luce, McDonald & Torrance*, for Respondent.

The defendant is required to allege and prove the value
of the land.    (*Monterey Co.* v. *Cushing*, 83 Cal. 507; Code
Civ. Proc., sec. 462.)    There may be a new trial of the
issue of fact as to value.    (Code Civ. Proc., sec. 656.)
Speculative opinions as to profits are not admissible.
(*S. & C. R. R. Co.* v. *Galgiani*, 49 Cal. 139; *Reading etc.
R. R. Co.* v. *Balthaser*, 119 Pa. St. 472; *Reading etc.
R. R. Co.* v. *Balthaser*, 126 Pa. St. 1.)

*William F. Herrin*, also for Respondent.

It was the duty of the defendant to raise an issue of
fact as to the value of the land, and the burden was upon
him to prove the value.    (*California Southern R. R. Co.*
v. *Southern Pacific R. R. Co.*, 67 Cal. 63, 64; *Monterey Co.*
v. *Cushing*, 83 Cal. 510; Code Civ. Proc., secs. 462, 590,
1868.)    The defendant, having been allowed to prove
value under the denials of the answer, cannot object
that there was no issue as to value upon which a new
trial could be had.    The order granting a new trial must
be affirmed, if proper, on any ground appearing in the
statement.    (*Oullahan* v. *Starbuck*, 21 Cal. 414; *Grant* v.
*Moore*, 29 Cal. 647, 648; *Altschul* v. *Doyle*, 48 Cal. 535;
*Savage* v. *Sweeney*, 63 Cal. 340.)    The market value of
the property is the only criterion of damages, and not
its value to the plaintiff, or its necessity for public use.
(*San Diego Land Co.* v. *Neale*, 78 Cal. 68; Lewis on Em-
inent Domain, secs. 478, 479; *Selma R. & D. R. R. Co.* v.

*Keith,* 53 Ga. 180; *Virginia etc. R. R. Co.* v. *Elliott,* 5 Nev. 359; *Union Depot Co.* v. *Brunswick,* 31 Minn. 297; 47 Am. Rep. 789; *Matter of Boston, H. T. & W. R'y Co.,* 22 Hun, 176; *Black River etc. R. R. Co.* v. *Barnard,* 9 Hun, 104.) Speculative profits from the use of the land cannot be considered. (*Stockton etc. R. R. Co.* v. *Galgiani,* 49 Cal. 139; *Tide Water Canal Co.* v. *Archer,* 9 Gill & J. 481; *Dorlan* v. *East Brandywine etc. R. R. Co.,* 46 Pa. St. 520; *Searle* v. *Lackawanna etc. R. R. Co.,* 33 Pa. St. 57; *Reading etc. R. R. Co.* v. *Balthaser,* 119 Pa. St. 472; 126 Pa. St. 1; *Gardner* v. *Inhabitants of Brookline,* 127 Mass. 358; *Burt* v. *Wigglesworth,* 117 Mass. 302, 306.) Opinions of witnesses based on incompetent matter should be rejected. (*Reading etc. R. R. Co.* v. *Balthaser,* 119 Pa. St. 472.)

PATERSON, J.—This is a proceeding to condemn land for reservoir purposes. On the former appeal (78 Cal. 63), the judgment was affirmed as to all the issues except the issue as to the value of the land. The cause was remanded for a new trial of that issue, a trial was had, and a judgment on a verdict for $122,657.50 and costs of suit was entered in favor of defendants; but the plaintiff moved for a new trial, which motion was granted, and the defendants have appealed.

It would be sufficient for us to say that as the order appealed from is one *granting* a new trial, and as the evidence as to the value of the land condemned is conflicting, the decision of the court below, in the absence of a showing of an abuse of discretion, will not be reversed. This rule has been so many times announced that it would be a work of supererogation to cite authorities in support of it. As some of the rulings of the court below at the trial were erroneous, however, we deem it advisable to refer to them for the guidance of the court at the next trial.

When the motion for a new trial was called for hearing, the defendants objected to the same being heard, on

the ground that the court had no jurisdiction to hear or determine a question of fact as to value. The same objection, although somewhat different in form, was presented on the former appeal and overruled. (78 Cal. 65.) The burden of proof as to value was on the defendants. *Cal. S. R. R. Co.* v. *S. P. R. R. Co.*, 67 Cal. 63; *Monterey County* v. *Cushing*, 83 Cal. 507.) It was their duty to allege and prove the value. Both parties assumed at the trial that there was an issue as to value, the case proceeded to trial and judgment upon that assumption, and the defendants cannot now complain.

The nature of defendants' land and its situation with respect to the reservoir of plaintiff is shown in the opinion filed on the former appeal. (78 Cal. 66.) It was there held that the court erred in allowing defendants to introduce evidence of value based on the fact that plaintiff's dam was already in course of construction, or upon " the circumstance that the land susceptible of irrigation from the reservoir would be enhanced in value . . . . by having irrigation facilities afforded to it. . . . . Where there is no actual current rate of price, and where in consequence the court must arrive at the value from a consideration of the uses to which the property may be put, it seems monstrous to say that the benefit arising from the proposed improvement is to be taken into consideration as an element of the value of the land." The court held that the present value of the property for prospective purposes might be given, and that it was proper, therefore, to show the value of the property for reservoir purposes, although it had never been used for such purposes.

The court below, however, in its rulings and instructions at the last trial, seems to have entirely misconceived the scope and effect of our former decision. Instructions were given, based upon facts so remote from the real issue in the case as to mislead the jury on the question of damages.

As stated before, it was decided on the former appeal, and is the law of the case, that the value of the land for any special purpose may be taken into account as one of the elements tending to show its market value. The fact that the land is suitable for such a purpose, and a chance exists that it may some time bring an enhanced value therefor, has a tendency to increase its market value, and may properly be considered in determining what its present market value is. In this connection it is proper to say that the learned judge who wrote the opinion in *Alloway* v. *City of Nashville*, 88 Tenn. 510, evidently misapprehended our decision in this case on the former appeal.

We did not hold that the value of the land for reservoir purposes was a measure of damages independent of any other consideration or element of value. On the contrary, the opinion distinctly states that the *market value* is to be the measure of damages, and that evidence of value for a special purpose is only to be considered as an element of the question. Neither the value in use to the plaintiff nor to the owner is to govern. Indeed, to guard against misapprehension, the court was careful to say: " The word 'value' is used in different senses. . . . . For the purposes of the law of eminent domain, however, the term has reference to the value in exchange or market value. There are some cases which seem to hold that the value in use to the owner is to be taken, if it exceeds the market value. But it will generally be found, on careful examination, that such cases either relate to the damage accruing to the owner from the taking, and not to the value of the property itself, or overlook the distinction between the two things. The *consensus* of the best-considered cases is, that for the purposes in hand the value to be taken is the market value. . . . . The problem, then, is to ascertain what is the market value. . . . . From the necessity of the case, the value must be arrived at from the opinions of well-

informed persons, based upon the purposes for which the property is ·suitable. . . . . What is done is merely to take into consideration the purposes for which the property is suitable, as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which, in a general sense, may be said to be the market value." In the Tennessee case, the court, not having the record in this case before it, fell into the error of saying that " in that case it was held that it was competent to prove the value of the land for a reservoir site, and to make that value the measure of damages, independent of any other consideration or element of value." The market value is the ultimate fact to be determined by the jury. If the land has a value for any particular purpose, its market value may be thereby enhanced. If its value for one purpose is to be excluded, why not for another? A vacant lot in a city cannot be condemned and taken at its value for agricultural purposes. If land which has been used only for pasturage contains valuable mineral deposits, it cannot be taken for public use without reference to what reasonable purchasers would, in the opinion of experts, be willing to give for it, taking into consideration the character of such deposits. The fact that the plaintiff wants the land for a particular purpose should not defeat the defendant in his efforts to show its market value by showing as an element its value for that particular purpose; and the fact that the plaintiff is the only person who has thus far offered to purchase is immaterial. The true distinction is, that the demand of the plaintiff alone is not to be considered exclusive of other considerations. It goes to make up the aggregate of demands, or probable demands, which is one of the elements of the inquiry. There is nothing in what we have said inconsistent with what was decided in *Gilmer* v. *Lime Point*, 19 Cal. 47, or *Central Pac. R. R. Co.* v. *Pearson*, 35 Cal. 247. In the former case the defendant offered to show what the land

was worth to the government as a site for a fortification. As the government was the only possible purchaser for such a purpose, it was apparent that the attempt to show what it was worth for a fortification was an attempt to prove what was its peculiar value to the government. In *Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247, the defendant attempted to show what the land would be worth to the owner, provided the state should thereafter grant him a wharf franchise; and the court held simply that such a fact was too remote, and speculative.

An attempt is made to distinguish a case where the owner of the land sought to be condemned occupies a commanding position from one where the land is remote from the dam site. This contention was disposed of adversely to the appellants in the decision on the former appeal. Land which is remote from the dam site may have a less value than land at the dam site, but the rule governing the admissibility of evidence must necessarily be the same in each case. The question in each case is, What is its market value? and is determined by the same rules. It will not do to say that land sought to be condemned for a reservoir purpose has no value for such purpose because it is too remote from the dam site. The fact that this land is sought to be condemned for such a purpose is an admission of its adaptability therefor.

But at the last trial the evidence was not confined to the question of the adaptability and value of the property as a reservoir site, considered as an element in the determination of its actual or market value. Witnesses were allowed to give estimates of value based upon speculative improvements, increase of population, extension of water systems, and profits which would result from the distribution and sale of the water; thus permitting the defendants to show practically what plaintiff, or another in its situation, could afford to pay for the land, rather than go without it. It was admitted at the trial

that " it was not practicable to have constructed a reservoir upon the 350.45 acres of land in controversy in this action except in connection with the adjoining land of the plaintiff below it, and lying between the defendant's land and the dam site." The plaintiff had constructed a dam by which water was impounded, covering all the land below defendants' land, and in fact, at the time of the trial, a portion of the lands in controversy. One of the witnesses testified on behalf of defendants that it would cost nine hundred and sixty thousand dollars to construct a dam, system of mains, and distributing-pipes, in order to utilize the reservoir to its utmost capacity over the territory tributary to it, and that estimating the market value of water to be one hundred dollars per acre for irrigation, and ten cents per thousand gallons for domestic purposes, the value of the land in controversy was $841 per acre on January 13, 1887. He stated that in arriving at that conclusion he estimated the cost of construction of a suitable dam and mains through the lands to be irrigated; assumed that National City had a population of two thousand, and that its increase in the next ten years would amount to six thousand five hundred; that the quantity of water would irrigate twenty thousand acres of land; that it would take ten years to complete the system and dispose of the entire volume of water at the rate of two thousand acres per year; allowed fifteen thousand dollars for running expenses, taxes, etc., and a sinking fund of eleven thousand dollars to renew the system at the end of twenty years; credited the reservoir for the sale of water rights and water rates received from National City; charged the reservoir interest at the rate of ten per cent, and carried the same system of debits and credits through a term of ten years, showing a balance at the end of the tenth year of $1,623,064 after all the indebtedness had been paid. This balance he considered as the amount that would be due to the land at the end of ten years.

"The present worth of that amount, discounted at ten per cent, or if that amount had been paid at the beginning of that ten years instead of at the end, it should have been $624,225, which, divided between 742 acres of land, amounts to $841 an acre."

The testimony was objected to, the objection was overruled, and plaintiff excepted. After it was admitted, the plaintiff moved the court to strike it out, on the ground that it was based upon considerations and contingencies so remote, uncertain, and speculative as to be wholly inadmissible and incompetent as a basis for fixing the market value of the land in question on the thirteenth day of June, 1887, or at any other time. The court denied the motion, and plaintiff excepted.

Another witness estimated the land to be worth six hundred dollars per acre, basing his conclusion upon similar calculations and contingencies, and upon the assumption that it was to be used in connection with plaintiff's reservoir.

It is contended by appellants that the testimony of these witnesses, and other testimony of a similar nature, was admissible, because there were no similar properties in the market, by a comparison with which the market value of the property in controversy could be arrived at; that the method pursued was simply fixing the actual value by calculation, — by considering the necessary expenditure in putting it in condition for certain purposes, and the probable income and profit which would result from its use. Many cases are cited in support of this contention, among them *Boom Company* v. *Patterson*, 98 U. S. 403; *Little Rock & F. S. R. R. Co.* v. *McGehee*, 41 Ark. 202; and *Little Rock J. R. R. Co.* v. *Woodruff*, 49 Ark. 381; 4 Am. St. Rep. 51. But none of the cases cited go to the extent claimed for them. In *Boom Company* v. *Patterson*, 98 U. S. 403, the court said that, as a general rule, compensation to the owner is to be estimated by reference to the uses for which the lands are suitable, having

regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future, and that the adaptability of the land for a certain purpose is a proper element for consideration in estimating the value of the lands when appropriated for public use.   There is nothing in the report of that case to show that the defendant was permitted to prove the cost of constructing the boom, and the profits which would result to the company from the use thereof.   In *Little Rock J. R. R. Co.* v. *Woodruff*, 49 Ark. 381, 4 Am. St. Rep. 51, the court said: "If the market value is the price for which the property could be sold on the market, we will next be led to inquire, How is the market value to be proven?   This is usually done by calling witnesses who are familiar with the property, and asking their opinion as to such value. . . . . When the witness has made his estimate as to the market value of the property, it is competent to support his estimate by having him describe the property, giving its location, advantages, and surroundings, though ordinarily this would be uncalled for, unless his estimate was attacked on his cross-examination, in which case the party introducing him would have ample opportunity to rebut any facts which might appear to be derogatory to his estimate. . . . . We deem it proper, however, to say that the presiding judge should not suffer collateral issues to spring up and multiply, or the jury to be taxed with facts and figures which could throw no appreciable light upon the question in hand, namely, the ascertainment of the market value of the property."

In the case at bar, the opinion of some of the witnesses was based on speculative and conjectural calculations of expenditure and profit for a period of five years, and others on a basis of ten years' use of the property in controversy, in connection with the property owned by plaintiff.   The facts and figures relied on in support of these opinions not only throw no light on the question,

but must have operated to confuse and mislead the minds of the jury. Of course, as was said in *Boom Company* v. *Patterson,* 98 U. S. 403, it is impossible to formulate a rule to govern the appraisement of property in all cases; but it is easy and safe to pursue the course pointed out by the court in *Little Rock J. R. R. Co.* v. *Woodruff,* 49 Ark. 381, 4 Am. St. Rep. 51. Let the witnesses in direct examination state their opinion as to the market value of the property, "having regard to the existing business wants of the community, or such as may be reasonably expected in the wants of the immediate future," and support their estimates by a description of the property, giving its location, surroundings, and advantages for any particular use, if it have any. Opposing counsel should then be " allowed to make every inquiry touching the property which one about to buy it would feel it to his interest to make," and for the information of the jury, and to test the value of the opinion given, be permitted the widest latitude in cross-examination.

The following authorities establish the proposition that the compensation to be awarded the owner of the land condemned cannot be based upon the value of the property to the person or company in charge of the public use, nor by its necessities, and that it is not proper to take into consideration the profits which may result from the use of the land, especially where the profits depend upon the expenditure of large sums of money in carrying out the contemplated enterprise: *Tide W. Canal Co.* v. *Archer,* 9 Gill & J. 481; *Gardner* v. *Inhabitants of Brookline,* 127 Mass. 358; *Burt* v. *Wigglesworth,* 117 Mass. 302; *Reading etc. R. R. Co.* v. *Balthaser,* 126 Pa. St. 1; *Dorlan* v. *E. B. W. R. R. Co.,* 46 Pa. St. 520; *Stockton & C. R. R. Co.* v. *Galgiani,* 49 Cal. 139.

Appellants contend that the court did not err in refusing to strike out the testimony objected to, because the witnesses were competent to express an opinion as to value, and the reasons for such opinion can only affect

the weight to be given to their testimony; but we think that where a witness bases his opinion *entirely upon incompetent and inadmissible matters,* or shows that such matters are the chief elements in the calculations which lead him to such conclusions, it should be rejected altogether.   (*R. & P. R. R. Co.* v. *Balthaser,* 119 Pa. St. 472.) It clearly appears that the witnesses referred to based their estimate of the value of the property upon an anticipated investment of a large amount of money in an extensive system of water-works, and founded their opinion largely upon hypothetical expenditures and receipts of money, and an increased demand for water. The court, too, adopted the same erroneous rules, and under its instructions the jury must have found such price as in the opinion of the witnesses the land might bring, or probably would bring at some future period, if plaintiff or another in its situation should extend the works as contemplated by the witnesses.

It is claimed by the appellants that the plaintiff ought not to be heard to complain of the ruling of the court in admitting the testimony referred to, because its own witnesses had given testimony of the same character; but, as was said when the case was here before, "the introduction of irrelevant evidence upon one side without objection does not justify the introduction of irrelevant evidence upon the other side."   (See also *Walkup* v. *Pratt,* 5 Harr. & J. 56.)   But if the ruling of the court could be sustained for the reasons urged, the court, in some of its instructions to the jury, as stated before, adopted the same rules as those followed by the witnesses in their testimony.

The court instructed the jury, at the request of defendant, that in considering the weight to be given to the opinions of witnesses as to the value of the land for reservoir purposes, they might take in consideration, amongst other things, the character and capacity of the works necessary and proper for the utilization of the

defendants' land for reservoir purposes, the quality and condition of the lands irrigable from the reservoir, the need of such lands for irrigation in order to make them habitable and productive, together with the needs of the inhabitants of cities and towns within reach of this system of water-works, and appearing on the 13th of June, 1887, to be dependent upon it for water; *the proportion which the defendants' land bears to the remainder of the plaintiff's reservoir;* the quantity of water the storage of which is secured by the use of the defendants' land *in connection with the adjoining land of plaintiff or other persons, and the value of such water as a salable commodity in the neighborhood tributary to this reservoir on the thirteenth day of June, 1887;* also, that in considering the value of the land for reservoir purposes, as a guide to ascertaining its market value, the question was, not what it was worth to plaintiff as owner of the remainder of the reservoir and dam site in June, 1887, doing business as they proposed to do, but it is, What was it worth to any reasonable person able and willing to buy, *and intending to acquire by purchase or condemnation the dam site and the remainder of the reservoir, and to use the whole for supplying water for public use over the territory tributary to this system?* that the jury had a right to consider, if it be a fact, the proximity of the land to an eligible dam site, and its availability for reservoir purposes, *in connection with such dam site and other adjacent lands.*

The court had fairly and fully instructed the jury at the request of plaintiff on the subject of value, but these instructions, given at the request of the defendants, were erroneous, because they, in effect, indorsed the methods of calculation employed by the defendants' witnesses, and informed the jury—at least the jury undoubtedly so understood it—that they might find the value to be what the land was worth to the plaintiff, or another in its situation, and that this might be determined by a calculation of the probable profits from sales of water and

water rights at prospective prices.   The cost of works
necessary for the utilization of the land for reservoir
purposes was an element in the calculation as conjectural
and speculative as would be the cost of a railroad and
running stock necessary for the operation thereof in fix-
ing the value of land condemned for railroad purposes.
The quality and condition of the lands to be affected was
as foreign to a legitimate estimate of the market value
of the land as the size and growth of a city on the line
of the railroad would be in fixing the value of land taken
for railroad purposes.   The necessities of the public are
never taken into consideration in fixing the value.   They
are an element which must be proved before the land
can be taken, but are never an element of the question
as to compensation.   The proportion which the defend-
ants' land bore to the remainder of the plaintiff's reser-
voir, and the quantity of water which would be stored by
use of the defendants' land in connection with the land
of plaintiff, and the value of the water as a salable com-
modity, were clearly improper elements to be considered.
(*Tide W. Canal Co.* v. *Archer*, 9 Gill & J. 481, and other
cases.)

The question was, not what the property was worth to a
person intending to acquire it and the dam site and the
remainder of the reservoir by purchase or condemnation
for the purpose of supplying water over the territory
tributary to the system, but what was the market value
of the property itself.   In other words, what the defend-
ants could have obtained for their land if it had been
offered for sale in the market, a reasonable time being
given within which to make the sale.   The plaintiff
must compete in the market with *bona fide* purchasers
generally, but its necessities cannot be taken advantage
of.   So far as the value of the land in controversy may
have been increased to purchasers generally by the con-
struction and use of the plaintiff's dam and reservoir, or
as a part of the entire reservoir site, such fact should be

considered, but the value of the land when used in connection with the plaintiff's land cannot be taken as a criterion, for this would be taking the value to the plaintiff as the measure of compensation. The jury had a right to consider the fact, in determining the market value, that the land in controversy was in proximity to a dam site, and to consider its adaptability for reservoir purposes, and to determine whether or not its market value had been enhanced by improvements put upon adjoining property; but for the reasons stated its adaptability for reservoir purposes should not have been considered " in connection with such dam site and other adjacent lands."

Respondent has requested us to pass upon every one of the seventeen assignments of error in the statement; but in view of what we have said regarding the rulings of the court and the instructions, it seems unnecessary to do so. It is sufficient to say that any *facts* showing the nature of the land in controversy, and its adaptability for reservoir purposes, may be shown. The area of the water-shed and amount of water were matters proper to be considered; for a reservoir would be useless without water. That there was land irrigable from the reservoir, and cities and towns which were being supplied with water from wells, were matters not only tending to show that it was a practical reservoir site, but bearing directly upon its value. The condition of the property, the uses to which it may be put, having regard to the existing advantages for making a practical use of the property, and such advantages as may be reasonably expected in the immediate future, are all matters for consideration in estimating the value of the lands (*Boom Company* v. *Patterson*, 98 U. S. 403); but to attempt to ascertain the value by estimating the cost of works necessary for its use for a particular purpose, the cost of operation, prospective sales and estimated profits, increased demands through growth of population, etc.,

requires "a degree of refinement in the measure of values which seem to us totally incompatible with the gross estimates of common life. . . . . The gross estimates of common life are all that courts and juries have skill enough to use as a measure of value. All other measures are necessarily arbitrary and fanciful." (*Searle* v. *L. & B. R. R. Co.*, 33 Pa. St. 64.)

The court did not err in overruling plaintiff's objection to the question asked Mr. Schuyler during his cross-examination. It was proper to show that he had at some prior time entertained a different opinion as to the value of the property.

Some of the witnesses on both sides never saw the land in controversy until several years after the date of the summons, at which time the right to compensation and damages accrued. We think their opinions ought not to have been received.

We think that the company should pay the costs of this proceeding, on account of the manner in which it opened and proved its case at the last trial. Section 1255 of the Code of Civil Procedure provides that "costs may be allowed or not, and if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court." Mr. Lewis, in his work on Eminent Domain, paragraph 559, in speaking of the question of costs, says: "It seems to us that courts should be guided by the following principles and considerations in the matter: By the constitution the owner is entitled to just compensation for his property taken for public use; he is entitled to receive this compensation before the property is taken or his possession disturbed; if the parties cannot agree upon the amount, it must be ascertained in the manner provided by law, as the property cannot be taken until the compensation is paid, and as it cannot be paid until it is ascertained, the duty of ascertaining the amount is necessarily cast upon the party seeking to condemn the property, and

he should pay all the expenses which attach to the process. Any law which casts this burden upon the owner should, in our opinion, be held to be unconstitutional and void. . . . . If the statute gives the condemning party a right of appeal, it cannot cast the costs upon the owner, even if the assessment is reduced." (See also *In re New York, W. S. & B. R. R. Co.*, 94 N. Y. 287.) Whatever may be the constitutional rights of the parties, we think, in this case, under section 1255, that it will be a proper exercise of discretion to require the company to pay costs.

The order is affirmed, and the court below is directed to tax the costs of the last trial, and of this appeal, against the plaintiff.

McFARLAND, J., HARRISON, J., GAROUTTE, J., and SHARPSTEIN, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment, on the ground that there was such a conflict of evidence on the question of value as to warrant the order directing a new trial, but I do not think the superior court erred in ruling upon the motions to strike out testimony, or in its instructions to the jury.