[Sac. No. 1594. In Bank.—October 29, 1909.]

## SACRAMENTO SOUTHERN RAILROAD COMPANY, Respondent, v. LOUISE R. HEILBRON, Appellant.

EMINENT DOMAIN—MEASURE OF DAMAGES FOR LAND TAKEN—MARKET VALUE.—The measure of damages for land actually taken for public use is its market value, that is, the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all the uses and purposes to which it was adapted and for which it was capable.

ID.—MARKET VALUE HOW ASCERTAINED—EVIDENCE OF VALUE FOR SPECIAL PURPOSE INADMISSIBLE.—In determining such market value, the test is not its value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted. While, therefore, evidence that it is valuable for any particular purpose may always be given and should be freely received in an action for its condemnation, its value in terms of money, which a witness might think it would have for such particular purpose, is inadmissible.

ID.—INSTRUCTIONS AS TO ASCERTAINMENT OF MARKET VALUE.—In such an action, where the jury are properly instructed to arrive at the market value, after due consideration and allowance for all of the purposes for which it was shown that the property was adapted, a further instruction, that they "must take into consideration the purposes for which the property was adapted, and determine the market value from what a person would then have paid for the property, in cash, not buying, however, for any particular purpose, but having regard to the market value of the property as it then stood for all purposes," is not erroneous or misleading.

ID.—DAMAGES TO LAND NOT TAKEN—ACTUAL AND MARKET VALUE.—In an action to condemn a right of way for a railroad, an instruction on the subject of ascertaining and assessing the amount of damages which might accrue to the portions of the land of the defendant not sought to be condemned, which is otherwise in strict accord with the rule laid down in section 1249 of the Code of Civil Procedure, is not rendered erroneous by using the phrase "market value" of the land, instead of the phrase "actual value" as employed in that section. In legal parlance, such phrases are synonymous.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order refusing a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

A. M. Seymour, and A. L. Shinn, for Appellant.

William H. Devlin, and Devlin & Devlin, for Respondent.

HENSHAW, J.—This action was to condemn for railroad purposes a strip of land extending diagonally across a tract owned by defendant. Following the jury's award of damages defendant appeals, the principal contention upon appeal being that the court erred when instructing the jury upon the law governing their consideration in estimating the damages sustained by defendant. The asserted errors are found in instruction VIII, laying down the rule for measuring damages for the land actually taken, and in instruction IX, where the jury is told how to arrive at the damages which may have resulted by the impairment and depreciation in value of the remaining portion of the freehold.

Limiting this consideration for the present to the award by way of damages for the land actually taken, the rule is of universal acceptance that the measure of this damage is the market value; that is to say, the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable. In varying language the principle has oftentimes been announced. "Some of the cases hold that its value for a particular use may be proved, but the proper inquiry is, what is its market value in view of any use to which it may be applied and of all uses to which it is adapted." (Lewis on Eminent Domain, sec. 479.) "In estimating the damages to be allowed where property is taken for a public use, the recovery is not limited to the value in connection with a particular purpose for which it may be used, but all its capabilities or uses to which it may be adapted should be considered in order to determine the market value." (Joyce on Damages, sec. 2185.)

That this is the measure of damages is not disputed. But by appellant it is contended that the rule as laid down in this state permits evidence of value for the use of the land

for a particular purpose in terms of money, that is to say price, to be given in evidence; while respondent insists that the rule does not go so far; that the rule permits evidence to be given of all uses and purposes for which the land is or may become adapted, but that it forbids the opinions of witnesses to be given as to the value in terms of money of the land for any specific purpose, and limits those opinions to the market value of the land, taking into consideration all of the uses and purposes for which it may have been shown in evidence that the land is suitable. Unquestionably the general rule forbids evidence of value in terms of money to be given touching a specific purpose or use. It is to be considered whether, as appellant contends, the rule in this state does so permit. In *Gilmer* v. *Lime Point*, 19 Cal. 47, the question was asked of land sought to be condemned: "What was the value of the property as a site for a fortification?" Here was the first effort in this state to have value for a specific use declared in terms of money. The question was ruled out. This court disposed of the claim that this ruling was error by the brief statement that there was no merit in the contention. In *Central Pac. R. R. Co.* v. *Pearson*, 35 Cal. 247, it was ruled that evidence of the value of lands in terms of money directed to the specific use of the land for wharf purposes was inadmissible. In *San Diego Land Co.* v. *Neale*, 78 Cal. 63, [20 Pac. 372], the land condemned being a portion of a reservoir site, it was held that it was proper to show the value of the property as a reservoir site, the commissioner writing the opinion declaring that this is not "sanctioning a remote or speculative value. It is merely taking the present value for prospective purposes." This decision was by a divided court, one of the justices not participating, two distinctly dissenting upon the ground that the value in terms of money for reservoir purposes could not be shown. The case again came before this court, and is reported in 88 Cal. 50, [25 Pac. 977]. There this court felt itself bound by the law of the case as laid down upon the former appeal, saying: "As stated before, it was decided on the former appeal and is the law in the case, that the value of the land for any special purpose may be taken into account as one of the elements tending to show its market value." Proceeding with the consideration, the court again places itself in line with the well-established rule by the

declaration: "It is sufficient to say that any facts showing the nature of the land in controversy and its adaptability for reservoir purposes may be shown." In *Spring Valley Water Company* v. *Drinkhouse,* 92 Cal. 528, [28 Pac. 681], by a divided court, where land was sought to be condemned for reservoir purposes, it was held, following the case of *San Diego Land Co.* v. *Neale,* that questions asked of a witness: "Do you know what the value of that land is down there for reservoir purposes? Have you any means of knowing the value of this for reservoir purposes?" should have been allowed. Mr. Justice Harrison in his concurring opinion in this case takes the position that the questions were admissible as tending to show the witness's knowledge of the adaptability of the land for a particular use, and as thus affecting the worth of his testimony upon the market value, which alone is to govern. Reviewing the case of *San Diego Land Co.* v. *Neale,* he says: "To the extent that the opinion announces the right to offer evidence of such value (for a specific purpose) as an independent fact to be considered by the jury as a measure of the compensation to be awarded, it is at variance with an almost unbroken line of authorities, and, in my opinion, ought not to be followed." The following case of *Santa Ana* v. *Harlin,* 99 Cal. 538, [34 Pac. 224], a Department case, quotes Lewis on Eminent Domain, section 479, to the following effect: "The conclusion from the authorities, and reason of the matter seems to be that witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted." This the Department declares it regards "as a correct exposition of the law on the subject." This opinion was concurred in by Justice De Haven, the author of the opinion in *Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528, [28 Pac. 681], by Justice Paterson, the author of the opinion in *San Diego Land Co.* v. *Neale,* 88 Cal. 50, [25 Pac. 977]; and by Justice Harrison. Justice Paterson, in his especially concurring opinion, declaring his view that his opinion in *San Diego Land Co.* v. *Neale,* 88 Cal. 50, [25 Pac. 977), was in strict accord with the case of *City of Santa Ana* v. *Harlin.* In *Kishlar* v. *Southern Pacific R. R. Co.,* 134 Cal. 636, [66 Pac. 848], the question again arose, the court saying: "Plaintiff (appellant) concedes in his brief 'that market value

is not necessarily the use to the plaintiff for a particular purpose,' but he claims that 'this use to the plaintiff for a particular purpose is a very proper element to be considered by the jury, and should not be taken from the jury in arriving at market value.' (Citing *San Diego Land etc.* v. *Neale,* 88 Cal. 50, [25 Pac. 977].) In *Santa Ana* v. *Harlin,* 99 Cal. 538, [34 Pac. 224], which was a proceeding to condemn land, the court said: "The present market value of the land is the measure of damages, and not its value in use to the owner or to the parties seeking to condemn. There is nothing in the Neale case indicating a different rule. The availability of the property for any particular use may be shown, and in the present case all the facts bearing on the use to which the building was adapted and for which it was being used were shown."

It is seen, therefore, that this court by its latest utterances has definitively aligned itself with the great majority of the courts in holding that damages must be measured by the market value of the land at the time it is taken, that the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted; that therefore while evidence that it is "valuable" for this or that or another purpose may always be given and should be freely received, the value in terms of money, the price, which one or another witness may think the land would bring for this or that or the other specific purpose is not admissible as an element in determining that market value. For such evidence opens wide the door to unlimited vagaries and speculations concerning problematical prices which might under possible contingencies be paid for the land, and distracts the mind of the jury from the single question—that of market value—the highest sum which the property is worth to persons generally, purchasing in the open market in consideration of the land's adaptability for any proven use.

With this as the rule established in this state, we come to a consideration of the instructions given and attacked. Those instructions, varying somewhat the order of their delivery to the jury, are as follows:—

VI. "You are not to consider what the land was worth to the defendant, the owner, for speculation, or merely possible uses, nor what she claims it was worth to her, nor what it may be

worth to plaintiff for railroad or other purposes, nor what the land would bring at a forced sale.  You are not to consider the price the land would sell for under special or extraordinary circumstances, but its fair, market value, if offered in the market under ordinary circumstances for cash, a reasonable time being given to make the sale.  Market value is the amount the strip would sell for if put upon the open market, and sold in the manner in which property is ordinarily sold for cash in the community where it is situated, with a reasonable time being given to find a purchaser and make the sale."

VII. "The location of the property, its surroundings and all other things are to be considered, but you are not to indulge in speculation or conjecture.  The law does not require that the plaintiff, in order to take the land, should pay a value based upon speculation, or what might happen if certain things would occur."

I. "In ascertaining the market value you may consider the purposes for which the land is adapted, and the price for cash it would bring for any purpose, allowing a reasonable time in which to find a purchaser on February 14, 1906."

VIII. "You must take into consideration the purposes for which the property was adapted, and determine the market value from what a person would then have paid for the property, in cash, not buying, however, for any particular purpose, but having regard to the market value of the property, as it then stood, for all purposes."

Of instructions VI, VII, and I no criticism is made.  It is conceded that they do clearly and pertinently declare the law.  But instruction VIII, it is said, is self-destructive and at variance with instruction I.  Against this instruction it is argued that when the court tells the jury that they are to determine the market value from what a person would then have paid for the property in cash, *not buying, however, for any particular purpose*, the instruction, in effect, excludes from the jury's consideration the sum which would be paid by any purchaser desiring to use the land for a particular purpose, and that, as, in the nature of things, most, if not all, persons buy land with the design of using it for a particular purpose, the error and injury worked by the instruction become manifest.  Upon the other hand, it is insisted that the instruction means no more than that the jury was told that it was to de-

termine the market value from what a person would then have
paid for the property in cash, taking into consideration the
purposes for which it is adapted, but cautioning the jury that
it is not at liberty to consider the particular purpose for
which a buyer might desire to use the property, but is to reach
its valuation having regard to the market value of the prop-
erty for all purposes. So construed, the instruction is unob-
jectionable, is in accord with the instructions previously given,
and correctly states the rule. We think, reading all of the
instructions upon this point together, and in view of the
fact that throughout the jury was properly instructed to arrive
at the market value, after due consideration and allowance
for all of the purposes for which it was shown that the property
erty was adapted, that the jury could not have been misled,
as appellant contends, but must have adopted as the natural
meaning and import of the language the construction assigned
to it by respondent.

Criticism is also made of instruction IX, which is as
follows:—

"After you have determined the value of the strip of land
sought to be condemned for the right of way, you must then
ascertain and assess the amount of damages, if any, which
accrue to the portion not sought to be condemned by the
plaintiff. This damage if any, will be determined by ascer-
taining, in the same manner as heretofore stated, the market
value of those portions of said tract not taken as it was on
February 14th, 1906, and by deducting therefrom the market
value of said property after the severance and proposed rail-
road is constructed. The difference between these values, if
there shall be any, will be the amount of damage done by
the opening of said railroad to the part of said land not
taken. The law fixes this method of ascertaining the damages,
and it is your duty to follow it. You must exclude in this
estimate, however, any estimate of benefits derived from build-
ing the road, to the property not taken."

This instruction is in strict accord with the mandate of
section 1249 of the Code of Civil Procedure. It is argued,
however, that the instruction uses the term "market value,"
while the statute employs the phrase "actual value," and that
confusion and injury result by not following the precise words
of the statute. It is herein said that market value is not the

legal measure at all, but a clumsy method frequently and sometimes erroneously adopted for ascertaining actual value, which is the true test. We think this, however, an over-refinement. The law universally has adopted market value as establishing actual value, and however clumsy the appellant may think that the method is, it is the best one so far known to the law.

The foregoing discussion disposes of certain alleged errors of the trial court in ruling upon evidence. McWilliams's evidence as to the price which he thought would be paid for the land by one desiring it for nursery purposes was not admissible. It was not even contended that McWilliams qualified himself to testify as to the market value, and his testimony amounted to no more than that the land was suitable for nursery purposes, and that for such purposes a purchaser could be found who would pay so much per acre. Here is an excellent view of the domain of speculation which is opened by the introduction of testimony such as this. The next witness might in turn testify that he believed the land valuable for oil and worth, therefore, for that purpose, thousands of dollars per acre. A third witness might find a similar special use and value for townsite purposes and declare his opinion of the value per acre based upon this consideration. We see nothing in the other rulings of the court in admitting and rejecting evidence to call for further statement than that they were correct.

No other matters seem to call for consideration.

For the foregoing reasons the judgment and order appealed from are affirmed.

Sloss, J., Angellotti, J., Shaw, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.