UNITED STATES v. 25.406 ACRES OF LAND, etc., IN ARLINGTON COUNTY, VIRGINIA et al.

No. 5830.

United States Court of Appeals
Fourth Circuit.

Feb. 21, 1949.

A. Carter Whitehead, Sp. Asst. U.S. Atty., of Richmond, Va., and Ralph J. Luttrell, Atty., Dept. of Justice, of Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., George R. Humrickhouse, U.S. Atty., of Richmond, Va., and N. Antilotti Smith and D. Murnan Smith, Attys., Dept. of Justice, both of Washington, D. C., on the brief), for appellant.

Francis M. Shea, of Washington, D. C. (Warner W. Gardner, of Washington, D. C., Gardner L. Boothe, of Alexandria, Va., and Harry R. Thomas, of Arlington, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment fixing compensation in a condemnation suit. The property involved is 25.406 acres of land, referred to as the Nevius tract, lying just across the Potomac River from Washington, opposite the Lincoln Memorial and near the terminus of the Memorial Bridge in Arlington County, Virginia. In June 1947, this property was taken as the site of a hospital for the Veterans Administration and the sum of $850,827 was deposited in the registry of the court below as estimated just compensation for the taking. The owners of the property declined to accept the sums so tendered, and the issue of the value of the property was tried before a jury, who returned a verdict of $1,600,000. From judgment on this verdict, the United States has appealed.

The facts are that the property in question is very valuable real estate lying within the metropolitan area of Washington. There is abundant evidence that the most profitable use that could be made of it would be as a site for high class multi-story apartments and that it is eminently suited for such use. It lies just across the Potomac from Washington, is well shaped, has an elevation of from 50 to 110 feet, is on the axis of the Mall, in line with the Capitol, Washington Monument and Lincoln Memorial, and commands a splendid view of the most beautiful part of the city. It is within a few minutes drive of the business section, the government offices, the railway station and the airfield. It is large enough to permit the creation of a high class neighborhood with eight elevator apartments, an apartment hotel, stores, shops, garages, etc.; and the evidence is to the effect that it is the only tract available within a reasonable distance of the center of Washington for development of this sort.

The testimony of the government was that the property was worth from 70 to 75 cents per square foot or a total of from $775,000 to $825,000; but this was from witnesses who considered it available only for the construction of two or three story "walk-up" type apartments, bringing a comparatively low rental, of the sort that had been constructed on other property in Arlington County. The lowest value placed upon the property by a witness for the owners was $2.50 per square foot. Others placed it at $2.50 to $3, $2.75, $3, $3.10 to $3.60, and one as high as from $5 to $6. The jury's verdict fixed it at $1.45, which was approximately double the value fixed by the government witnesses and half that of the median defense witnesses.

The questions raised by the appeal relate to the action of the court in permitting

the witnesses Babcock and Davis to testify as experts on the question of valuation, and in permitting these witnesses and the witness Winston to testify to their estimate of the income to be derived from the property as the site for a high class apartment development, as one of the factors entering into their opinion of value. Also presented is the question of allowing these witnesses to testify as to sales of comparable property in the City of Washington, as an element entering into their opinion.

The most important of these questions is that relating to the estimate of income to be derived from the property. This testimony was excluded, however, until it was established, not only that the property was suited for development of this character, but also that such development had been definitely planned and agreed upon and would have been carried out but for the taking of the property by the government. There was evidence showing that an apartment hotel and eight apartment buildings had been completely planned, that arrangements had been made with the Equitable Life Assurance Society to finance the undertaking, and that one of the leading construction firms of the country had agreed to undertake the construction, which could have been commenced within thirty days of the time when the property was taken. The testimony in question, therefore, related not to the nebulous cost of constructing a vague hypothetical project and the estimated income to be derived therefrom, but to the cost and expected income of a project which, according to the evidence, was definitely in the process of achievement.

■ There can be no question but that it was proper for the witnesses to take into consideration in estimating market value the availability of the property as a site for high class multi-story apartments, which, according to the evidence, was the highest and most profitable use for which the property was adaptable. Boom Co. v. Patterson, 98 U.S. 403, 407, 25 L.Ed. 206; United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336; Olson v. United States, 292 U.S. 246, 255, 257, 54 S.Ct. 704, 708, 78 L.Ed. 1236. As said in the case last cited, "The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held."

In the case of United States v. Powelson, 4 Cir., 138 F.2d 343, 345, we went fully into the question in connection with land which was suitable for water power development and held that the effect on market value of its availability for this purpose must be given consideration, saying: "Market value is nothing but a hypothetical concept based upon what, in the opinion of those who know, a willing buyer would have to pay a willing seller of property in order to purchase it. The question here is, not what wild mountain land was selling for in the community, but what would the portion of land owned by Powelson and available for this water power development have been reasonably worth on the market when sold by one who was willing but not compelled to sell and bought by one who was willing but not compelled to buy."

The rule laid down by us in the Powelson case was based upon the Miller case, supra [317 U.S. 369, 63 S.Ct. 280], where it was said that "the market value of the property is to be fixed with due consideration of all its available uses", and the rule as stated in Boom Co. v. Patterson, supra, where the Supreme Court used the following language:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what it is worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a

market value which can be readily estimated.

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably excepted in the immediate future."

■ The testimony as to the estimated income from the property was admitted, not as evidence of value (and this was carefully explained in the charge to the jury, where market value was correctly defined), but as a matter considered by the witness in arriving at the estimate of value to which he had already testified. Testimony as to value would be worth little or nothing, if witnesses were not allowed to explain to the jury their qualifications as experts and the reasoning by which they have arrived at the expert opinion to which they testify; and the rule is that they may thus give the grounds of their opinions. Wigmore on Evidence 2d Ed. sec. 562; Lewis, Eminent Domain 3d Ed. sec. 654.

■■ Of course an expert witness may not, under the guise of giving the basis of his opinion, lug in evidence which is incompetent or irrelevant, nor should he be permitted to go into the grounds of his opinion in such way as to confuse or mislead the jury; but the scope of such examination is a matter properly committed to the sound discretion of the trial judge, who should be careful, as was the trial judge here, to see that false issues are not suggested to the jury and that they are not otherwise misled. See United States v. Prettyman, 4 Cir., 142 F.2d 891; United States v. Becktold Co., 8 Cir., 129 F.2d 473; United States v. Block, 9 Cir., 160 F.2d 604. This is in accord with the modern trend in the law of evidence favoring a wide rule of admissibility, with discretion on the part of the trial judge to exclude evidence the probative value of which is outweighed by the risk that its admission will result in a useless waste of time or in confusing or misleading the jury. See A.L.I. Model Code of Evidence Rule 303.

■■ That it was not an abuse of discretion to permit expert witnesses testifying to the value of this property to give as one of the grounds of their opinion that the property had peculiar suitability for a site for high class apartments, is perfectly manifest. Olson v. United States, supra; Boom Co. v. Patterson, supra. For a case directly in point, see In re Inwood Hill Park, 230 App.Div. 41, 243 N.Y.S. 63, affirmed 256 N.Y. 556, 177 N.E. 138. It seems equally clear that in estimating the value of the property for this use, i. e. what a willing buyer would have to pay a willing seller to purchase it, the witness should be allowed to take into consideration what it would cost to develop the property in this way and what income could be expected from it when developed. Certainly such matters would be considered by any business man in selling, buying or valuing the property; and when the court adopts the standards of the market place in making valuations there is no reason why it should close its eyes to how the market place arrives at and applies the standards. As was well said by the late Judge Henry G. Connor, one of the great judges of this Circuit, "It is difficult to perceive why testimony, which experience has taught is generally found to be safely relied upon by men in their important business affairs outside, should be rejected inside the courthouse." Wade v. Carolina Tel. & Tel. Co., 147 N.C. 219, 60 S.E. 987, 989.

If oil had been discovered beneath the property, it would certainly have been proper for its availability for oil production to have been considered as bearing on its market value, and in this connection for a witness to have considered what it would cost to drill for the oil and what production could reasonably have been expected. See Cal-Bay Corp. v. United States, 9 Cir., 169 F.2d 15. No different principle applies, because the highest and best use of the property is a high class real estate development. United States v. Waterhouse, 9 Cir., 132 F.

2d 699; Atlantic C. L. R. Co. v. United States, 5 Cir., 132 F.2d 959; United States v. 3.544 Acres of Land, 3 Cir., 147 F.2d 596, 598, 599; United States v. Certain Parcels of Land, 3 Cir., 145 F.2d 374, 159 A.L.R. 1; Fain v. United States, 6 Cir., 145 F.2d 956.

We do not mean to say, of course, that an expert witness should be allowed to roam at-large in the realms of fancy and testify at length about hypothetical developments and mythical income to be realized therefrom.[1] When this is attempted it should be firmly suppressed because of its tendency to mislead and confuse and the waste of time involved. Nothing of this sort, however, is involved here. The development as to which testimony was allowed was one which had been carefully planned in detail before the taking by the government and one which would have been carried out but for the taking. Surely there was no abuse of discretion in permitting the experts to go into this as one of the matters they had considered in fixing values. Directly in point is the decision in Metropolitan Water Dist. v. Adams, Cal.Sup., 116 P.2d 7, 20, 21, which involved the taking for a reservoir site of property shown to have peculiar value for reservoir purposes and to have been the subject of proposed development prior to the taking. In holding testimony of cost of construction and probable earnings proper in support of testimony given as to valuation, the court said:

"In support of his opinion, given on direct examination, that the land was peculiarly fitted to said use, the witness, under cross-examination, outlined the several water importation projects, to which testimony appellant later took exception. Detailed facts and figures were given to prove economic feasibility, potential demand, and reasonable probability of achievement. Similar testimony was adduced on both direct and cross-examination of defendants' other two engineer witnesses. This evidence showed that the projects, far from being purely remote, conjectural, and speculative, lay well within the realm of probable achievement and economic feasibility. They were not conceived or outlined for the mere purpose of proving a point in this litigation or creating a market for the property, but represented the fruit of years of study and effort on the part of expert engineers to best plan for the conservation and use of available water supplies and storage sites in certain districts of southern California, in order to meet and satisfy an existing and fast growing public demand.

\* \* \* \* \* \*

"The engineers' calculations of the probable earnings of the projects described were admissible for the purpose of demonstrating the feasibility of the projects. No mathematical relation was shown between these estimations of earnings and the expressions of opinion of market value. But such estimations, showing economic feasibility, were factors to be considered with other elements of evaluation in their effect upon the weight to be accorded the opinions of market value given by the engineers. There was no statement by any engineer that the market value expressed by him was the equivalent of the price the land would bring if any of the projects should be consummated. Apparently in reaching an opinion of market value each engineer considered, as an element of evaluation, the probable influence of the prospective projects upon the minds of prospective purchasers. This was not, however, tantamount to fixing a future value which would exist only upon consummation of a project, or to capitalizing earnings, and it was not erroneous."

█ And we think there is as little merit in the objection to the testimony of the experts that, in arriving at their opinions as to value, they had taken into consideration sales of property suitable for similar apartments lying across the Potomac River in Washington proper. The witnesses were of opinion that the property was peculiarly suitable for high class apartments, and there was no reason why they

[1] Bank of Edenton v. United States, 4 Cir., 152 F.2d 251; Polson Logging Co. v. United States, 9 Cir., 160 F.2d 712; San Diego Land Co. v. Neale, 88 Cal. 50, 25 P. 977, 11 L.R.A. 604; Greenspan v. Norfolk County, 264 Mass. 9, 161 N.E. 894; cf. East Peoria Sanitary District v. Toledo, P. & W. R. R., 353 Ill. 296, 187 N.E. 512, 517, 89 A.L.R. 870.

should not compare it with other property in the Metropolitan area of Washington suitable for the same purpose and the prices obtained for that property. The admissibility of this, like the evidence of cost of construction and income, previously considered, was a matter resting in the sound discretion of the trial judge and there clearly was no abuse of the discretion. See Jones v. United States, 258 U.S. 40, 49, 42 S.Ct. 218, 66 L.Ed. 453; United States v. Prettyman, 4 Cir., 142 F.2d 891, 893; Fain v. United States, 6 Cir., 145 F.2d 956, 958.

■ Little need be said as to the ruling on the competency of the expert witnesses, Babcock and Davis. This, too, was a matter resting in the sound discretion of the trial judge, and there is nothing to show that the discretion was abused. On the contrary, it was shown that both of the witnesses were men of wide experience and knowledge; and, while not familiar generally with land values in Arlington County, Virginia, they were well qualified to form opinions as to the value of the property as a site for high class apartments in the metropolitan area of Washington. See Redman v. United States, 4 Cir., 136 F.2d 203, 205; White v. State of Maryland, 4 Cir., 106 F.2d 392, 397; James Baird Co. v. Boyd, 4 Cir., 41 F.2d 578, 583; Gila Valley R. Co. v. Lyon, 203 U.S. 465, 475, 27 S.Ct. 145, 51 L.Ed. 276.

■ This case affords good illustration of the wisdom of the modern rule to admit in evidence any matter which throws light on the question in controversy, leaving to the discretion of the trial judge to hold the hearing within reasonable bounds and depending upon the intelligence of the jury to reach a correct conclusion when the facts are all before them.[2] The government has sought to have the property

valued on the basis of the valuations of other property in its neighborhood without reference to its manifest suitability for a high class multi-story apartment development. The property owners have sought to recover a valuation based on the capitalization of income of non existent apartments. The jury under the wise and correct guidance of the able trial judge has avoided the pitfalls inherent in both extremes. It has ignored the fanciful values of the experts based in large part on capitalization of non existent income and has refused to be bound by the values which the property would have for the erection of cheap apartments. In fixing a valuation which is about half that of some of defendants' experts and one-fourth that of others, but about double that of the conservative witnesses introduced by the government, it has probably done about what is right. In cases of this sort, we must never forget that the common sense of the twelve men on the jury is a surer guaranty of justice than any attempt that might be made to give logical application to antiquated rules of evidence. If an honest and intelligent jury is given all the facts and is correctly instructed as to the law, it will come pretty near deciding a case correctly. Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their everyday affairs hinder rather than help them at arriving at a just result. In no branch of the law is it more important to remember this, than in cases involving the valuation of property, where "at best, evidence of value is largely a matter of opinion". See Montana R. Co. v. Warren 137 U.S. 348, 352, 11 S.Ct. 96, 97, 34 L.Ed. 681.

There was no error and the judgment appealed from will be affirmed.

Affirmed.

---

[2] Cf. Federal Rules of Civil Procedure, rule 43(a), 28 U.S.C.A.; Boerner v. United States, 2 Cir., 117 F.2d 387, 389, certiorari denied 313 U.S. 587, 61 S.Ct. 1120, 85 L.Ed. 1542; Franzen v. E. I. DuPont de Nemours & Co., 3 Cir., 146 F.2d 837, 842; Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709.