Theodore S. Curtis

*vs.*

Maine State Highway Commission

Penobscot.    September 28, 1964.

*Needham & Needham,*
     by *John H. Needham,* for Plaintiff.

*Orman G. Twitchell,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
     SIDDALL, MARDEN, JJ.

RESCRIPT

TAPLEY, J. On appeal. The defendant, on August 9,
1961, took by the process of eminent domain 2.80 acres of
the land of Theodore S. Curtis, the plaintiff in this action.
In also took the right to maintain slopes on .09 acres of
plaintiff's land. Plaintiff's land is located in Orono, Maine
at the junction of Kelley Road and U. S. Route 2. The total
land area owned by the plaintiff and affected by the con-
demnation proceedings comprised 17.07 acres. After the
taking there remained 14.27 acres subject to the slope ease-
ment. The land had a frontage of 328 feet on U. S. Route
2 and a frontage on the Kelley Road of 736 feet. The land
was unimproved and the major portion of it heavily wooded.
The amount of just compensation was decided by the Land
Damage Board. The instant plaintiff and defendant each
appealed from the decision of the Board. The case was
tried before a drawn jury at the April Term, 1963 of the
Superior Court, within and for the County of Penobscot.
The jury verdict favored the plaintiff in the sum of
$4500.00. The case is before this court on appeal by the
defendant. Defendant's points of appeal are as follows:

"1.    The Court erred in allowing the witness
       Lawrence Perkins to testify as to the cost of
       construction of water lines on land of Theo-
       dore Curtis before the date of taking, August
       9, 1961, as such testimony is speculative, im-
       material and prejudicial.

"2.    The Court erred in allowing the witness Law-
       rence Perkins to testify as to the cost of con-

structing water lines on the land of Theodore Curtis after the date of taking, August 9, 1961, and the completion of construction of the improvement, according to the proposals as such testimony is speculative, immaterial and prejudicial.

"3. The Court erred in refusing to strike the testimony of witness Lawrence Perkins.

"4. The Court erred in refusing to give the additional requested instruction of the defendant-appellant, State of Maine, in the form as requested without adding exceptions thereto.

"5. The Court erred in allowing in evidence plaintiff's Exhibit #2 as the same is prejudicial, immaterial and speculative."

The parties, by agreement, entered an exhibit (plaintiff's Exhibit #1) which purports to be a plan of the land involved, bearing the following words of identification: "Survey Plan of Archibald Bennoch Lot Orono, Maine." This plan is based on a survey by one F. M. Taylor, C. E., dated July, 1955.

On the question of just compensation, the plaintiff takes the position that the best and highest use of the property is that of subdivision for the purpose of the construction of high-grade dwellings; that the area is best adapted for that purpose and because of the taking, the necessary installation of a water supply for the benefit of a part of the subdivision would be more expensive and sought, by testimony, to prove it. The major objection on appeal by the defendant is to the court's allowance of this testimony for jury consideration. The defendant objected for the reasons that the nature of the testimony was speculative, prejudicial and immaterial.

The controversy centers around the market value as determinative of just compensation.

The property before the taking consisted of 17.07 acres. The State took by the process of eminent domain 2.808 acres which left remaining 14.27 acres. The taking of the property was for the purpose of the construction of an access road to State Highway #95. The road is so constructed that it bisects property of the plaintiff, thus dividing the proposed subdivision.

The focal point of the case is the admission of the testimony of one Lawrence Perkins which was objected to by the defendant on the grounds that it was too speculative in its nature, immaterial and prejudicial. Mr. Perkins is a supervisor of the Penobscot County Water Company, having to do with the installation of water mains. He testified that before the taking, the pipe, the trenching and the installation of the pipe would cost approximately $2500.00 and that because of the taking, the cost would be increased over the original figure of $2500.00. There is much explanatory testimony as to why the increase would be occasioned by the taking. The principal reason for the increased cost is the necessity of crossing and recrossing the access road by water lines in order to service the lots planned to be created on a portion of the subdivision.

The plaintiff is entitled to just compensation for the taking of his property by the process of eminent domain.

*Bangor & Piscataquis Railroad Company* v. *McComb,* 60 Me. 290, 296, 297, speaks of the words "just compensation" in the following language:

> "The words selected are significant, — 'just compensation.' These words cover more than the mere value of the quantity taken, measured by rods or acres. They intend nothing less than to save the owner from suffering in his property or estate, by reason of this setting aside of his right of property, — as far as compensation in money can go, — under the rules of law applicable to such cases.

"The paramount law intends that such owner, so far as that lot is in question, shall be put in as good a condition, pecuniarily, by a just compensation, as he would have been in if that lot of land had remained entire, as his own property.

- - - - -

· "There must be, however, a limit, which will exclude remote, indefinite, or possible damages."

The owner of the land taken by the process of eminent domain is entitled to an exact equivalent for the injury; he is to be made whole insofar as money can compensate. His right is to receive no more or no less. *Chase, et al.* v. *City of Portland*, 86 Me. 367.

Just compensation, as the term is used in eminent domain proceedings, is determined by a fair market value. The test is the market value of the land for its best and highest use at the time of the taking or in the foreseeable future. *United States* v. *3,544 Acres of Land*, 147 F. (2nd) 596.

· ."- - - a distinction is to be observed between what land may be worth in the future and what it is now worth in view of the future. And as no man can foresee the future with any certainty we are allowed to base calculations to some extent on the reasonable probabilities of the future.

- - - - -

"- - - it is a general principle — that if the future use of land will in all probability be greater and more valuable than its present use, such probability may be an element to be received into the calculation to establish present value.

- - - - -

"It is the near, immediate future that may influence; the uncertain, indefinite, doubtful future can not. The doctrine is to be carefully applied." *Portland and Rochester Railroad Company* v. *Inhabitants of Deering*, 78 Me. 61, 66, 67.

See also *Gilmore* v. *Central Maine Power Company*, 127 Me. 522.

For techniques of measuring just compensation in eminent domain proceedings, see note in *Boston University Law Review*, Volume 42, Page 326.

> "When a portion of a tract of land is taken, the rule of establishing the damages - - - in the absence of unusual circumstances, is thoroughly settled; it is 'the difference between the market value of the whole tract as it lay before the taking, and the market value of what remained of it thereafter and after the completion of the public improvement - - - . Generally speaking, market value is 'the price that would in all probability — the probability being based upon the evidence in the case — result from fair negotiations, where the seller is willing and the buyer desires to buy.' " *Andrews* v. *Cox Highway Com'r.*, 17 A. (2nd) 507, 509 (Conn.).

> "The land is to be valued according to its highest and best use as shown by the evidence even though the owner may not at the time of the filing of the petition be putting it to such use." *Dept. of Pub. Works & Buildings* v. *Lambert, et al.*, 103 N. E. (2nd) 356, 359 (Ill.).

The land at the time of the taking was unimproved, with a substantial portion of it wooded. According to the testimony the best and highest use to which the property could be adapted was that of a subdivision for the construction of high-grade dwellings. It therefore develops that the market value to be determined as of the day of the taking is not based upon the market value of the property as it was then used but rather its market value based on its potential use as a subdivision.

> "In determining the market value of a piece of real property for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration. The possibility of its use for all purposes, present

and prospective, for which it is adapted and to which it might in reason be applied, must be considered. Its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test. On the other hand, possible uses which are so remote and speculative and which would require the concurrence of so many extrinsic conditions and happenings as to have no perceptible effect upon present market value must be excluded from consideration. To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, (3) that the market value of the land has been enhanced by the other use for which it is adaptable." *Nichols on Eminent Domain,* Vol. 4, Page 140, Sec. 12.314.

Under the circumstances of this case, where the potential use of the land is that of a subdivision, or a housing development, and market value is based on its potential use, it must be shown (1) that the possibility for building purposes must not be remote and speculative; (2) that it is to be put to such use within the foreseeable future and (3) that its market value has been enhanced by its adaptable use as a subdivision.

The plaintiff contends that the bisecting of the property by the access road would make it more expensive to construct water mains for the purpose of serving the proposed lots situated on the easterly side of the access road. The testimony of Mr. Perkins is presented to show the additional or increased costs made necessary by the taking — not the cost of water service installation as would apply had not the property been affected by the condemnation of a part of the land.

" --- it is not necessary that the extrinsic improvement which will make the land specially available for a particular purpose be in existence when the land is taken, if the probability of its being constructed in the immediate future is so strong as to have an effect upon present market value." *Nichols on Eminent Domain*, Vol. 4, Page 158, Sec. 12.314.

The testimony of Mr. Perkins pertains to market value on basis of extra requirement of pipe lines and their installation occasioned by the taking.

The plaintiff's position is (1) that his property has for its highest and best use (potential use) that of a subdivision or development area for the construction of high-grade dwelling houses; (2) that the market value should be determined at the time of taking on the basis of its potential use; (3) that a necessary adjunct to a subdivision is water mains for the servicing of house lots; and (4) that by the taking of a strip of land bisecting the property and defendant has caused additional expense in servicing those proposed lots lying easterly of the land taken.

In presenting testimony offered to show additional expense, the plaintiff met with objection on the part of the defendant. The defendant argues that such testimony should not be admitted because it is speculative, immaterial and prejudicial. Mr. Perkins testified, in substance, that the original cost of the laying of water lines would be $2500.00 and that because of the taking and the resultant bisecting of the property by the access road there would be additional costs for installing water mains and lateral service lines. He presented three proposals as to the manner in which the laying of the mains could be accomplished and the cost as to each proposal. The first proposal would increase the cost over the original amount by $4090.00; the second proposal would increase it in the amount of $3080.00; and should the third proposal be accepted, the

amount of increase would be $5200.00. The defendant, in argument, urges that in admitting these costs there could be created an influence on the minds of the jury to the end they would completely ignore the before and after value rules as they relate to just compensation. Counsel for defendant lays great stress on his position that Mr. Perkins' testimony as to costs is highly speculative and with no reasonable expectation that they will apply to installations to be done in the foreseeable future.

The allowance of the type and character of Mr. Perkins' testimony would be for the purpose of affecting market value — not to show damages in dollars and cents. A water supply is necessary to a housing development and with the taking the condemner has created a condition which affects the value of a portion of the property in its adaptation to its best and most highest use — that of a development for the construction of dwellings. This testimony, in order to be admissible for the purpose of being considered as an element in determining market value, must meet the test of relevancy.

The justice below was obviously aware that evidence of the estimated increase in the future cost of utilities (required in connection with the highest and best use of the property remaining after severance) can be received, if at all, only as a factor in the determination of the fair market value after taking. In his charge to the jury he gave the instruction requested by the defendant: "Evidence bearing upon the costs of installing water pipes on the land of the landowner to service a proposed subdivision of said land into lots for residential type dwellings, is not to be considered by you in determining the just compensation to be paid this landowner by the State of Maine for taking a portion of his land for highway purposes" - - - but then continued by saying, "except, as I am now going on to explain. Mr. Perkins testified that the location of this road and the

nature of its banks or slopes, you will recall what his testimony was as to that, the nature of the location and construction of the road, he said, increased the potential cost of putting water into the area, and he quoted some figures as to what it would cost if anyone of three plans were followed to get water into the area. Again I caution you we must not be speculative. We cannot conclude that Mr. Curtis will now divide the land into 6 or 8 or 10 lots and that those lots would be sold and would require water, each of them require water. We don't know how many lots will ever be sold or how many connections will ever be made. You may consider this testimony that I speak of only in this manner: A willing buyer and a willing seller, although they would probably realize the future sales of the lots were still uncertain and speculative, would take into consideration that getting water into this property is now more or less difficult and expensive than before. If it is more difficult and would be more expensive than before, if that is true they would take that into consideration, and that might or might not affect the fair market value of the property. It is for you to say whether it would or would not, but the law does not permit juries to say, we think 6 or 8 or 10 lots would be divided from this remaining property and sold and therefore we will add exactly a certain number of dollars to our verdict for the plaintiff because the plaintiff will now have to get water to this 6 or 8 or 10 lots and cost x number of dollars. That would be too speculative. You may consider that only as the willing buyer and willing seller might at the time of the taking looking into the foreseeable future decide, if they would, that water would be required upon the property to be used for its highest and best use and that the construction of the highway would make more difficult and more expensive the potential distribution of water if such is the case, and only to that extent may you consider Mr. Perkins' testimony in that respect."

The difficulty in this instant case is that the evidence was too prejudicial to be submitted to the jury even under carefully limiting instructions as to the use the jury might make of it. This is not merely a matter of estimating the costs of restoring the use which the owner had before the taking. *Cf. Arkansas State Highway Commission v. Speck* (1959), 324 S. W. (2nd) (Ark.) 796. In the case before us the land before the taking was unused and undeveloped. It was not served by any water facility. There was no suggestion as to whether the owner would ever bring water to his property or how or where he might do so. The witness was compelled to assume that if water were brought to the land, it would be done at such a location and in such a manner that it would cost, absent the new highway, $2500. To establish the excess in cost of water installation attributable to the public improvement, he was further compelled to assume that the land would be subdivided in a particular manner and in accordance with a certain plan and that water would be brought by a route which would necessarily cross the new highway. Such testimony given in connection with a wholly undeveloped tract of land is too remote and too speculative to be permitted to enter into the deliberations of the jury. The prejudice which might result could only be eliminated by an instruction to disregard, as the defendant requested. We do not suggest or imply that an expert witness is precluded from testifying that his estimate of the fair market value of the property remaining after severance took into account, among other factors, the probability of increased difficulty and expense in getting water to the property. But except when being tested on cross examination, his specific estimate of the cost of such a remote and indefinite undertaking would not ordinarily be received. The witness Perkins was not called to give an opinion as to fair market value, but only as to the specific costs of bringing to the property a service which it never had and might never need.

In the present case, where the jury verdict may have been influenced by the inadmissible and prejudicial testimony of Perkins, the entry must be,

*Appeal sustained.*