Strafford,
No. 5405.

### Dover Housing Authority *v.* Charles M. George.

Argued April 6, 1966.
Decided May 31, 1966.

*Burns, Bryant & Hinchey* ( *Mr. Donald R. Bryant* orally ), for the plaintiff.

*Fisher, Parsons, Moran & Temple* ( *Mr. Robert H. Temple* orally ), for the defendant.

DUNCAN, J. The property of the defendant taken in these pro-ceedings consisted of 37 acres of undeveloped land bordering the west bank of the Cocheco River in Dover. By the time of trial, the plaintiff Authority had constructed some sixty low-cost hous-ing units at the northerly end of the tract bordering Whittier Street, while the southerly portion of the tract remained essentially unchanged. The tract was bordered on its westerly and southerly sides by other private and public housing developments.

The defendant's evidence was that the highest and best use of the property was for a housing development, and a plan of lots was received in evidence which he testified had been prepared for him with a view to such development some two years before the taking of September 1960.

The plaintiff properly took the position that the land was to be valued as a unit, and the jury was so instructed on several occasions throughout the trial. The plaintiff took the further position that any development in accordance with the defendant's plan was not economically feasible. Witnesses called by the plain-tiff placed a value of $7,300 to $7,800 on the tract at the time of the taking, while a witness for the defendant testified to a value of $49,950 or an average price per acre of $1,350.

The tract was bisected by a right of way owned by the city for an outfall sewer which carried effluent from a settling tank across the tract in an easterly direction to the river. The northerly boundary on Whittier Street was divided by a tract owned by Dooley, a third party, which had a frontage on the street of 75 feet and was 500 feet in depth. As a result, the frontage of the defendant's land on the street extended 244 feet east of the Dooley property and 405 feet to the west of it.

A brook entered the property at the northwest corner, running to low and swampy land to the south of the Dooley land. On the westerly boundary of the defendant's tract, some 500 feet southerly of the brook, was a ridge of land which rose 40 feet above the level of the low land to the east. At the southwesterly border, the land rose on a steep slope to adjoining land. Across

the southerly end, extending from a cove in the river, was another low and swampy area, bordered by woodland.

There was evidence that 12 acres on the north of the tract along Whittier Street, and a field at the northeast corner, were more readily capable of development for housing than the balance of the tract. The feasibility of developing the tract into more than 100 lots with frontage of 100 feet each, as shown by the defendant's plan, was earnestly disputed by the plaintiff.

The defendant undertook to show by his witnesses, subject to objection and exception by the plaintiff, that the entire tract was capable of development by the provision of roads, sewer and water at a cost approximating $110,000; and that lots so developed would have had an average market value on September 30, 1960 of $2,000 each, thus producing a net value of approximately $90,000 for the tract in a developed state.

The plaintiff argues that the defendant's evidence with respect to prospective development of the tract was erroneously received, citing authorities which stand for the proposition that such evidence is incompetent because speculative and not the measure of damages . *E. M. Kerstetter, Inc.* v. *Commonwealth,* 404 Pa. 168. See *Tigar* v. *Mystic River Bridge Authority,* 329 Mass. 514; *Curtis* v. *Maine Highway Comm.,* 160 Me. 262; 5 Nichols, Eminent Domain (3d *ed.*) s. 18.11[2], *pp.* 159-161.

The jury was correctly instructed throughout the trial that the measure of damages was "the market value of the property as a unit on September 30, 1960," and that evidence regarding development of house lots was to be considered "to such extent, and only to such extent as a seller and buyer would take [that evidence] into consideration in arriving at the sales price of the property as a unit." *Roy* v. *State,* 104 N. H. 513; see *Parkinson* v. *State,* 104 N. H. 534.

Various objections offered by the plaintiff to the plan of lots, and to a plan showing a proposed sewer system, as well as to the qualifications of the principal witness who testified concerning the proposed development, were met by the defendant as the trial progressed. The objection that the plan of lots was not shown to be accurate was satisfied by the testimony of an engineer who had overseen construction of the plaintiff's housing project. The expert testimony produced by the defendant was sufficient to warrant receipt of the plans in evidence.

Cross-examination by plaintiff's counsel adequately exposed the uncertainties and expense standing in the way of realization of the values quoted by defendant's principal witness as the probable market value of the lots in a developed state. Difficulties in supplying water and in complying with zoning requirements were disclosed by the plaintiff's evidence. Its evidence also tended to show that $500 was the maximum price per acre for sales of undeveloped land in the vicinity, suitable for development.

So far as our examination of the record discloses, the plaintiff at no time sought exclusion of the testimony of defendant's principal witness upon the ground that it was wholly incompetent because speculative or not entitled to consideration. The objections of the plaintiff went wholly to the question of the qualifications of the witnesses, authentication of the original plan of lots, and lack of evidence of feasibility of the projected development, either economically, or from the standpoint of access to city sewers and water supply. Its argument as briefed in this court was that the evidence should not have been received "without proper foundation being laid," and that it was error to allow cost figures to be introduced "on a basis so insufficient as that set forth in [the principal witness'] testimony."

We consider that the objections to the evidence were properly overruled in the Court's discretion. In *Roy* v. *State, supra,* 104 N. H. 513, the tract in question had been partially developed before the taking. In the case at bar development had not been commenced before taking, but a preliminary plan was produced which antedated the taking. It was findable that demand for the property for development purposes existed or probably would exist in the reasonably near future. *Olson* v. *United States,* 292 U. S. 246, 255; *State Highway Commission* v. *Conrad,* 263 N. C. 394; 29A C.J.S. *s.* 160, *pp.* 685-689. Competent evidence was produced concerning cost of development for what was claimed to be the most advantageous use of the land. Under the circumstances the evidence of potential use was not required to be restricted "to a bare statement why the property is adapted for a particular purpose and to testimony of its value for such purpose" ( 5 Nichols, Eminent Domain, *supra, s.* 18.11 [2] *p.* 157 ) since the jury could find that the adaptability of the land for the projected use was capable of "positive influence upon present market value." *Id., p.* 161. See also, 4 Nichols, Eminent

Domain, *supra, s.* 12.3142 [2]. There was no error in the rulings of the Trial Court.

The plaintiff objected to certain portions of the argument to the jury by defendant's counsel, and excepted to rulings permitting the argument to stand. Arguing that the plaintiff had not been entirely candid, counsel said: "Where are the specifications — the detailed specifications? Where did somebody from the Housing Authority come in here and say . . . so many yards of fill we had to bring in . . . the specifications called for the removal of so many yards of land . . . at so much a yard . . . ." Plaintiff's counsel objected that "there was no request made during the trial for specifications. Mr. Labrie had papers with him if they had been asked for." The objection was overruled.

Mr. Labrie, superintendent for the contractor which built the project, testified as to the fill removed from the ridge referred to in the testimony. The plaintiff argues in this court that the argument by defendant's counsel to the jury was an "unwarranted inference," which was not justified by the evidence, namely that the specifications would not have supported Labrie's testimony. At the trial however, the objection was upon the ground that the specifications had not been called for. The fact is that no witness testified directly as to what the specifications required with respect to the removal of clay and the deposit of fill, although it could be inferred from Labrie's testimony that what he did was pursuant to the specifications. The exception is overruled.

Continuing his argument, counsel said: "Do you want to award compensation . . . on the pictures [introduced in evidence by the plaintiff] when the photographer gets on the stand and says that the place that had water on it was about as big as the jury box." Upon objection, the Court inquired whether counsel was "talking about the whole area or one specific spot," and counsel replied: "This part that is shown in the picture your honor."

It is not disputed that reference was made to exhibit N, which the witness testified showed the only wet area found by him, except in the area of the brook. The plaintiff argues that the inference sought to be drawn was that "the wet area on the property was only the size of the jury box." We think that the argument was legitimate, based as it was upon the testimony of the photographer.

The plaintiff further objected and excepted to argument that

three witnesses "all said the area from Whittier Street down until you approached the second swamp was good land for developing." In support of this exception, plaintiff now argues that although its witness Christensen testified that twelve acres could be developed, this acreage "does not go all the way to the second swamp." The testimony of all of these witnesses, it is argued, indicated that the area between Whittier Street and the second swamp was *not* "good land for developing."

Examination of the testimony leads to the conclusion that the witnesses in question agreed in substance that the northerly portion of the tract was more readily developable than the southerly part, where the second swamp was located. The plaintiff's witness Christensen testified that approximately twelve acres were "really good usable land," and could be developed, although it "would be quite expensive." We cannot accept the plaintiff's contention that the argument to the jury was a "palpable misstatement of the evidence," and the exception is overruled.

The final exception to argument by defendant's counsel was to argument that if the twelve acres were separately developed, they would yield "four lots to an acre and you take the cost that Mr. Patterson gave you for developing the 12 acres and I submit . . . you will then come up . . . with a figure near $50,000." It is true as the plaintiff argues, that there was no direct evidence that the twelve acres could be separately developed into 48 lots having a value of $50,000 after development. Upon plaintiff's objection, counsel for the defendant pointed out that the record contained "the measurements," a plan showing the streets, and testimony as "to all the component parts." The Court permitted the argument to stand, and instructed the jury to "make your own calculations."

The witness Patterson had testified as to the cost of developing the entire tract in considerable detail, including the cost per running foot of providing streets, water, and sewers. Defendant counsel's argument could be evaluated by the jury from the evidence in the record and under general instructions given by the Court was to be considered only to the extent it would be taken into account by a prospective buyer. Considering the record as a whole, we cannot say that the argument went beyond permissible bounds. The plaintiff's several exceptions to argument accordingly are overruled.

In the course of direct examination by plaintiff's counsel the

witness Labrie testified that in constructing the plaintiff's housing project 11,000 yards of bank-run gravel were brought onto the land "so that we could move our cement mixers and so forth on the project, but this was not for the underpavement to bring the pavement to grade." He explained further that this was "so we could work the project on account of the clay being so soft and spongy." When counsel sought to learn the cost of the gravel the answer was excluded upon objection, with comment by the Court that "we are getting more into the construction of . . . a low cost housing project" and "I don't think that we ought to try out the construction of [that] project here." Subsequently for the same reason defendant's counsel was prevented from showing the contract price on the project. The ruling of the Trial Court was properly made in its discretion, in the interest of excluding collateral issues and avoiding confusion. See *Howson* v. *Company*, 87 N. H. 200, 208; 6 Wigmore, Evidence (3d *ed.*) s. 1864.

The plaintiff's twelfth request for instruction, which it contends was erroneously denied, was adequately covered by the charge to the jury. The jury was expressly told that the defendant's plan for development should be considered in determining market value only if the plan were found to be economically feasible or capable of adaptation to use, and then only to the extent that it would have been considered in negotiations for a sale. The jury was further instructed that in such case it should consider all of the pertinent evidence, including costs, physical features, zoning regulations, character of the soil, ease or difficulty of development, access to the city and its sewer and water lines, and other enumerated factors. In substance, the request was granted.

The plaintiff further argues that the verdict was excessive and the product of "prejudicial material brought to the jury's attention by counsel for the landowner," and that the Court erred in failing to set the verdict aside. In denying the plaintiff's motion to set aside the verdict, the Trial Court found that the plaintiff's rights had not been prejudiced, and this finding is sustainable. *Hoyt* v. *Horst*, 105 N. H. 380, 388-9; *Jolicoeur* v. *Conrad*, 106 N. H. 496, 500. On the record as a whole we find no reversible error, and the order is

*Judgment on the verdict.*

All concurred.