Rose WARREN

v.

WATERVILLE URBAN RENEWAL AUTHORITY.

Supreme Judicial Court of Maine.

Nov. 21, 1967.

Jerome G. Daviau, Waterville, for appellant.

Lester T. Jolovitz, and William Niehoff, Waterville, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

This is an eminent domain case. By reason of a change of venue under 14 M.R.S.A. § 508, an Androscoggin County jury awarded the plaintiff sixty thousand ($60,000) dollars as just compensation for the taking by the Waterville Urban Renewal Authority, defendant, of plaintiff's real estate situated on Temple Court, so-called, in the City of Waterville. Constitution of Maine, Art. I, § 21. Dissatisfied with the jury award, Mrs. Warren appeals on grounds which may be consolidated as follows: (1) the trial court erred in denying plaintiff's motion to strike the value opinion of the defendant's sole expert witness and in instructing the jury to consider it in their deliberations, for the reason "that the basic hearsay facts upon which he based his opinion was [sic] not found in the evidence and therefore that his opinion was without supporting evidence"; (2) such error deprived the plaintiff of her constitutional rights of due process and the resulting jury award failed to come up to the just compensation required under both the Constitutions of the State of Maine and of the United States. We disagree on both counts.

In order to resolve the first issue raised on this appeal, we must review to some extent the conduct of the trial below. Heyward

Sawyer, the defendant's expert witness, testified in direct examination, in explanation of the methods followed by him in arriving at his land and building values, that he used factual information gleaned from records in the assessors' office in Waterville and at the County Registry of Deeds office in Augusta; that he got his leads as to comparable properties from brokers in the community; that he made personal inspection of the reference comparables; that he obtained the sale price, the date of sale, the dimensions of the lot and the special circumstances of the sale, if any, from either the buyer or the seller, the broker or banker who participated in the deal; that he secured the gross rental charge from the owner or tenant.

In connection with his land value, he gave the details on 5 separate sales of properties in Waterville which he identified and asserted as comparable to the Warren land. From the data which he had procured as above indicated and from his examination of the lands taken together with his personal inspection of the lands used for value analyses, he testified that in his expert judgment the sum of $25 per front foot represented the fair market value of the Warren land at the time of taking, with adjustments made for depth of the various Warren lots.

This witness further added that he reached his fair market value of the Warren buildings by using several recognized and sound approaches to market values, such as the reproduction cost less depreciation, sales of comparable properties, and capitalization of income obtained by use of a gross rent multiplier. He explained to the jury the intricate workings of these several scientific devices available for value ascertainment and indicated that in estimating the fair market value of the Warren buildings, he used all three test-formulas as an assist in his ultimate determination as well as a proof-check on the accuracy of the results reached in each of the tests. Counsel for the plaintiff-owner raised no objections to

the introduction on direct examination of the details of the selected sales of comparable properties testified to by the defendant's expert, including the sales price, rental charge and other data. He cross-examined fully thereon and had the witness admit that if his sources of information as to the rental charges and sales prices of the comparable properties were in error, then he would be in error, his estimates would vary and his opinion of value would not be accurate. Defendant's expert used 5 sales of comparable properties in fixing the fair market value of the Warren buildings. His ultimate opinion of the fair market value of the Warren property before the taking was, $6,350 for the land and $41,450 for the buildings, or an aggregate value of $47,800.

It is true that the opinion of an expert as to value should be stricken and not be considered as evidence where it is demonstrated during his testimony that his opinion rests wholly or chiefly upon reasons or matters which are legally incompetent or upon principles which are unsound. Boston Gas Co. v. Assessors of Boston, 1956, 334 Mass. 549, 137 N.E.2d 462, at page 480; San Diego Land & Town Co. v. Neale, 1891, 88 Cal. 50, 25 P. 977, 11 L.R.A. 604; Commonwealth, Department of Highways v. Darch, 1964, Ky., 374 S.W.2d 490. If it appears that the witness has no reasonable basis whatever for his opinion, then his testimony should be stricken. Arkansas State Highway Commission v. Russell, 1966, 240 Ark. 21, 398 S.W.2d 201. The testimony of a professional appraiser properly to be accepted must be based upon sound principles. Farrington v. Maine State Highway Commission, 1963, 159 Me. 95, at page 96, 188 A.2d 483.

In the instant case, the expert opinion was aided by factual data, such as the sales prices and rental charges of comparable properties, which the witness obtained from hearsay sources. He did not have personal knowledge of these details. His qualifications however were not in issue and he was permitted to testify to such facts without

any objection from the plaintiff either on the ground that such evidence was hearsay or for any other reason. As a matter of fact, counsel for the plaintiff during his direct examination of plaintiff's own expert witness countered the defendant's objections that the evidence sought to be introduced was hearsay, with the argument to the Court that he thought it well-accepted law that an expert expresses his opinion first and then explains the basis for it. And the Court siding with the plaintiff on this issue permitted plaintiff's expert to use such hearsay information and express his opinion of value to the jury, even though he had based the same on comparables the factual details of which he also had obtained from hearsay sources. Furthermore, at an early stage in the plaintiff's direct examination of her own expert witness, defendant's counsel repeatedly objected to certain evidence on the ground that the expert's sources of information were hearsay. In order to speed up the trial and resolve the proper procedural course to be taken, the trial judge conferred with counsel in chambers in the absence of the jury on this very issue. He laid down the ground rules and policy to be followed concerning expert testimony. He indicated that he was going to be liberal in allowing expert witnesses to testify and that all the plaintiff needed to do was to produce experts that in the opinion of the Court possessed sufficient qualifications to express an opinion and that such expert opinion would go to the jury for them to pass upon the weight thereof. The trial judge stated that the same liberality in receiving expert testimony would be extended to the defendant's expert witnesses. Upon inquiry by the Court as to whether counsel took issue with the Court's intended procedural conduct of the trial respecting the reception of expert testimony, no objections were raised and both counsel manifested acquiescence therein.

■ Thus, the factual information, such as the sales prices or the rental charges of the comparable properties used by both expert witnesses, even though hearsay, was in the case by consent of both parties. As stated in Goldthwaite v. Sheraton Restaurant et al., 1958, 154 Me. 214, at page 221, 145 A.2d 362, at page 366, 79 A.L.R.2d 881, "[I]t has frequently been held by our court that when evidence is admitted without objection and no motion is made to strike it from the record, it becomes what has been designated as 'consent evidence'." Moore v. Protection Ins. Co., 29 Me. 97; Brown v. Moran, 42 Me. 44; Tomlinson v. Clement Bros., 130 Me. 189, 154 A. 355; Watkins Co. v. Brown and McPherson, 134 Me. 473, 188 A. 212.

Plaintiff, after acceding to the announced liberal approach to be used by the Court in the reception of expert testimony and receiving the benefits thereof whereby her own expert witness was permitted to express his ultimate opinion of value to the jury, notwithstanding that his detailed information respecting comparable properties was obtained through hearsay sources, cannot successfully object to the admissibility of the condemnor's expert's ultimate opinion of value secured in similar fashion. The plaintiff had gotten her estimates of fair market value before the jury on an agreed procedure acted upon by the trial court, even though her expert had tapped sources of information of a hearsay nature and she had allowed similar testimony of the condemnor's expert witness to reach the jury without objection; to permit her thereafter to change her position, adopt a different tack and seek to remove her adversary's expert's opinion of value in the case from consideration by the jury, would not only be unfair to the trial court but manifestly unjust to the opposing litigant. She had agreed to a settled course of trial procedure and she should not be relieved therefrom to the prejudice of the other party, except for compelling reasons. See Portland Flying Service, Inc. v. Smith, Me., 1967, 227 A.2d 446. A party cannot claim aggrievement from trial conduct which he actively seconded or tacitly tolerated. See Thompson v. Perkins, 1869, 57 Me. 290.

Our Court in *Goldthwaite* has clarified the rule respecting the probative value of "consent evidence." Such hearsay evidence "may properly be considered and given its natural and logical probative effect. The fact finder must always, however, weigh such evidence with caution, mindful of its inherent weakness, the same weakness which leads to exclusion upon objection. It may properly be said that such evidence may properly be given weight as corroborative of other competent legal evidence, but will not alone support a verdict or finding." The defendant's expert whose qualifications were admitted had the benefit of personal examination of the Warren properties as well as personal knowledge of the physical layout of the comparable properties. He was knowledgeable of the fair market value of properties in the area. His use of the hearsay data relating to the purchase price or rental charge of the comparables only served him in support or adjustment of value findings which due to his expertise he could determine otherwise. Such evidence did not stand alone and given proper weight by the trier of the facts, it could properly affect the other evidence of value introduced by the plaintiff through her witnesses.

The opinion of an expert is not necessarily rendered inadmissible or incompetent because it may be based on knowledge of facts gained from hearsay sources. Any expert worthy of the name must of necessity assimilate prior learning derived from the experiences of others. As an expert witness he draws upon various sources of information whose credibility or trustworthiness he must determine in the light of his expertness. It would completely frustrate the use of expert witnesses if they were obliged to substantiate each single factor upon which their ultimate opinion must depend upon firsthand personal knowledge or personal experience. If some of the expert's factual information is derived from sources fairly trustworthy though hearsay and he has as such the ability to co-ordinate and evaluate that information with all the other facts in his possession secured through personal observation, the trial court may in the exercise of a sound discretion permit the expert's ultimate opinion to be considered by the jury. Vigliotti v. Campano, 1926, 104 Conn. 464, 133 A. 579; Universal Investment Company v. Carpets, Incorporated, 1965, 16 Utah 2d 336, 400 P.2d 564.

In Isenhour v. State, 1901, 157 Ind. 517, 62 N.E. 40, at page 44, that court stated the rule which meets with our favor:

"Courts have never undertaken to set up a standard of scientific knowledge by which the competency of a witness may be determined, and have not gone to the extent of holding that a scientific witness can only testify from facts learned by him from personal demonstration. The general rule in such cases * * * seems to be that, where a witness exhibits such a degree of knowledge, gained from experiments, observation, standard books, or other reliable source, as to make it appear that his opinion is of some value, he is entitled to testify, leaving to the trial court, in the exercise of sound discretion, the right to say when such knowledge is shown, and to the jury the right to say what the opinion is worth; and, as in all other cases of discretion, this court will review the action of the trial court only when that discretion clearly appears to have been abused."

We must remember that the expert's testimony relating to sales of comparable properties was introduced to show the reasons for the ultimate opinion of value of the witness and not as evidence having independent probative force upon the issue of market value. On the contrary, such evidence merely served to reinforce the value judgment of the witness and as such went to the weight to be accorded the opinion and not to its competency. The extent of the expert's knowledge of the subject matter and of the material data used in formulating his opinion of

market value, provided such facts are not based on mere speculation, goes to the weight rather than to the admissibility of his testimony. Territory of Hawaii, by Sharpless v. Adelmeyer, 1961, 45 Haw. 144, 363 P.2d 979.

And the trial Court in his instructions to the jury pertinently focussed the jury's attention to such evidence and accurately advised the jury that the weight of all such evidence was for them to assess in their evaluation of the experts' opinions: "If you should decide that any such opinion is not based on sufficient study, investigation, knowledge or experience; or if you should conclude that the reasons given for in support of the opinion are not sound, you may reject it in part or you may reject it entirely." Such instruction, further amplified in the course of the judge's charge, served to indicate to the jury the natural impact and serviceability of such evidence as the details surrounding the sales of comparables.

■ The testimony of expert witnesses concerning sales of comparable properties, even where the details thereof such as the sales prices or rental charges are secured from hearsay sources, as in the instant case, is not evidence inherently incompetent or devoid of all probative value, but rather has substantial relevancy to show the basis upon which the expert has formed his professional opinion of market value of the condemned property.

In Goldstein v. Sklar, 1966, Me., 216 A.2d 298, our Court held that it was not error to permit on direct examination plaintiff's medical expert and examining physician to relate the hearsay history given to him by the plaintiff, where the court instructed the jury not to consider such testimony as evidence of the facts stated, but only as it might support or explain the physician's diagnosis and opinion. We there stated that "[A]ll these declarations made by the patient to the examining physician as to his present or past symptoms are known by the patient who is seeking

medical assistance to be required for proper diagnosis and treatment and by reason thereof, are viewed as highly reliable and apt to state true facts." However, we raised a danger light in the use of such testimony when we further said:

"Where this evidence, although relevant and beneficial, is perhaps not absolutely necessary to the attending physician's approach to his diagnosis and treatment, we would not sanction under the guise of case history, even to the limited extent allowed in this case, a lengthy recital of past treatment with all the minute details thereof. Such evidence must be kept within reasonable legal orbit under the discretion of the presiding justice, so that the jury will not get the impression that the history of past treatment is substantive evidence in the case."

In Goldthwaite, supra, we said that it appeared to be quite generally held that when a medical expert assumes to base his opinion, partly at least, on authorities and not exclusively on his own experience, he may be cross examined with respect to the authorities for the purpose of disparaging or discrediting his testimony.

In Curtis v. Maine State Highway Commission, 1964, 160 Me. 262, 203 A.2d 451, an eminent domain case, we ruled that specific estimates of the cost of a remote and indefinite undertaking would not ordinarily be received *except when being tested on cross-examination.*

In Knox Lime Company v. Maine State Highway Commission, 1967, Me., 230 A.2d 814, at page 827, we reiterated that "except while being tested upon cross-examination he may not testify to estimated detailed costs of such uncertain procedures as extracting the mineral from the earth, processing and marketing it or of future profits from sales."

■ We recognize that in the case of a value expert investigating the details of the sales prices, rental charges or other necessary factual data concerning sales of

comparable properties upon which to formulate an opinion of market value of property taken by eminent domain, the same degree of reliability of the hearsay sources of information may not exist as in the case of a patient seeking proper diagnosis and cure from an examining physician. Even though such hearsay data may be considered as trustworthy by the investigating expert, nevertheless we adopt as the better policy in such cases the Massachusetts rule. Under such rule the expert is permitted to testify to value and thus give an opinion although his knowledge of details is chiefly derived from inadmissible hearsay sources, because he gives it the sanction of his general experience, but the fact that an expert may so use hearsay data as a ground for his opinion does not make the hearsay detailed terms of a particular transaction such as a sale of comparable property admissible in direct testimony, either as substantive evidence for the purpose of fortifying the opinion of the expert witness or even when offered merely under the guise of the reasons for the opinion. Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 1956, 335 Mass. 189, 138 N.E.2d 769; Peirson v. Boston Elevated Railway, 1906, 191 Mass. 223, 77 N.E. 769; National Bank of Commerce v. City of New Bedford, 1900, 175 Mass. 257, 56 N.E. 288.

■ But such evidence may be admitted on cross-examination for the purpose of testing the expert's credibility and good faith, the accuracy and extent of his knowledge, in other words, to try the soundness and weight of his opinion, provided that such evidence of collateral data, as the sale price or rental charge of the comparable property, was taken into consideration by the expert and entered into his estimate as a factor upon which value was based. See *Peirson*, supra. Felin v. City of Philadelphia, 1946, 354 Pa. 317, 47 A.2d 227; Berkley v. City of Jeannette, 1953, 373 Pa. 376, 96 A.2d 118; Frontage,

Inc. v. County of Allegheny, 1963, 413 Pa. 31, 195 A.2d 515.

The Texas Court in State v. Oakley, 1962, 163 Tex. 463, 356 S.W.2d 909, at page 914, 95 A.L.R.2d 1207, represents the opposite view:

"In a sense, of course, testimony of an expert witness concerning comparable sales which he has considered in reaching his opinion touching the value of the property under consideration involves an inquiry into the mental processes of the witness; the real question, however, is whether such testimony, which is inadmissible to prove the facts of such sales as evidence of the value of the property condemned, is likewise inadmissible in another capacity, that is, to show a basis of the opinion value stated by the expert witness and in which capacity the testimony is not hearsay in the true sense. The better reasoned view, in our opinion, is that the testimony is proper in such latter capacity, where, as in the case at bar, the testimony is given by a professionally qualified appraiser whose qualifications, and the comparability of the sales to which he testifies, are not challenged. The discretion of the trial judge, particularly in these latter respects, together with the opportunity on cross-examination to bring out facts contradictory to the statements and conclusions of the expert, and the instruction of the court limiting consideration by the jury of the testimony, beyond the purposes for which it was admitted, are substantial safeguards against its misuse. Moreover, whatever facilitation of expert testimony in a condemnation proceeding there may be under our holding is available alike to the condemnor and condemnee."

Following that view, we may list: Hance v. State Roads Commission of Maryland, 1959, 221 Md. 164, 156 A.2d 644; Stewart v. Commonwealth, 1960, Ky., 337 S.W.2d 880; State By and Through State Highway Comm. v. Parker, 1960, 225 Or.

143, 357 P.2d 548; 225 Or. 324, 358 P.2d 274; State Highway Commission v. Greenfield, 1965, 145 Mont. 164, 399 P.2d 989 (admissible both as independent substantive evidence of the value of the property to which the comparison relates and as foundation evidence supporting the opinion of the expert witness). See also 31 Am. Jur.2d, Expert and Opinion Evidence § 141, at page 695; 32 C.J.S. Evidence § 546 (117) at page 445; Annotation in 12 A.L.R.3rd at pages 1067–1080.

■ We are of the opinion however that to confine to cross-examination, and subsequently to any redirect examination upon matter properly opened up thereby, any inquiry into the details or mental processes by which the expert witness arrives at his conclusion of value, for the purpose of testing his credibility or for laying a predicate for impeachment, is the better rule, although we realize the modern trend of the authorities permitting the same in direct examination as well as in cross.

■ Thus, we do recognize that a valuation witness may for practical purposes base the foundation of his value opinion upon sales of comparable properties relying for the necessary facts on the statements of persons who personally participated in the sales or who have personal knowledge of the data to be considered by the expert in reaching his ultimate conclusion of value. Indeed, if each person previously involved in effecting comparable sales should have to be called to the stand to establish the detailed facts of such sales, it would lengthen litigation of this kind out of all reason and would make it almost impossible for the State or landowner to make a proper showing as to valuation opinion within a reasonable time and at reasonable expense. Limiting a detailed account of these sales of comparable properties to cross-examination, where the factual specifics including such as were obtained from hearsay sources may be introduced into evidence for purposes of testing the reasons sustaining the opinion of

value, is a guarantee against the proliferation of collateral issues with the jury, more nearly assures a proper evaluation and application of such evidence by the jury and adequately protects the adversary against surprise tactical advantage. Such evidence, in the instant case, excludable upon objection, but in fact admitted without objection, was not only "consent evidence" but proper evidence having probative value furnishing the foundation or the reasons for the ultimate opinion of the expert witness. There was no error in the trial court's refusal to strike the opinion evidence of the Authority's expert.

■ Plaintiff contends that Kittery Electric Light Co. v. Assessors of Town, 1966, Me., 219 A.2d 728, compels a contrary ruling. We disagree. In *Kittery* we said that an expert witness may not give an opinion based in part on the opinions of others. In the reference case, the expert witness was testifying under the guise of his own opinion to the opinion of field investigators as to what properties in Kittery were fairly representative of a cross-section of the non-utility properties and were proper standards for determination of the actual ratio tax assessment of non-utility property in Kittery bore to market value. To present to the jury someone else's opinion as the basis of the witness' own opinion by adoption would constitute an improper use of hearsay evidence. The witness' opinion must be his own; he cannot act as a mere conduit for the opinion of others. See, Tigar v. Mystic River Bridge Authority, 1952, 329 Mass. 514, 109 N.E.2d 148. Ipsen v. Ruess, 1948, 239 Iowa 1376, 35 N.W.2d 82; Mt. Royal Cab Co., Inc. v. Dolan, 1935, 168 Md. 633, 179 A. 54, 98 A.L.R. 1106; Zelenka v. Industrial Commission, 1956, 165 Ohio St. 587, 138 N.E.2d 667; Glenn v. Dunean Mills, 1963, 242 S.C. 535, 131 S.E.2d 696; Muro v. Houston Fire & Casualty Insurance Co., Tex.Civ. App.1959, 329 S.W.2d 326; 31 Am.Jur.2d, Expert and Opinion Evidence, § 42; 32 C.J.S. Evidence § 546(63), p. 268. See also, Farrington v. Maine State Highway

Commission, 1963, 159 Me. 95, at page 96, 188 A.2d 483. But, the testimony of the Authority's expert in this instant case in no way offended the rule for which *Kittery* stands.

■ Lastly, plaintiff claims that her rights of due process were violated. It is difficult to pinpoint the exact grievance about which she complains concerning her constitutional privileges. Does she mean that she was entitled as a matter of constitutional right to have excluded from the evidence opinion testimony of value of the Authority's expert because he based the same on factual data obtained from hearsay sources? If so, then we answer that the trial of the issue of just compensation for property taken in eminent domain proceedings under such rules of evidence as permit a qualified expert to predicate an opinion of value on factual data received from hearsay sources fully testable in cross-examination, is a proper substantial and efficacious judicial remedy to enforce the constitutional mandate of just compensation and plaintiff's claim of invidious deprivation of constitutional due process to the contrary is wholly untenable.

■ The condemnee has a vested right to be paid just compensation. The constitution so ordains. As a derivative thereof he is entitled to an efficacious remedy whereby such right may be substantially enforced. The evidence, which shall be received in the courts, and the effect of that evidence, lie within the powers of the State in regulating the remedy and mode of proceeding in its courts. See President, etc., of Oriental Bank v. Freese, 1841, 18 Me. 109; Ogden v. Saunders, 12 Wheat. 213, 262, 6 L.Ed. 606.

■ There is no such thing as a vested right to a particular remedy. The form of administering right and justice may be altered. See Thayer & al. v. Seavey, 1834, 11 Me. 284, at page 288; Barton v. Conley, 1921, 119 Me. 581, at page 584, 112 A. 670; Miller v. Fallon, 1936, 134 Me. 145, 183 A. 416.

■ The requirements of "due process of law" are satisfied when a remedial proceeding is available which provides for notice, opportunity for hearing and requires a judgment of some judicial or other authorized tribunal. McInnes v. McKay, 1928, 127 Me. 110, 141 A. 699; Inhabitants of York Harbor Village Corp. v. Libby, 1928, 126 Me. 537, 140 A. 382; Randall v. Patch, 1919, 118 Me. 303, 108 A. 97, 8 A.L.R. 65; Bennett v. Davis, 1897, 90 Me. 102, 37 A. 864.

■ Constitutional restrictions of due process undoubtedly would bar legislative or judicial deprivation of substantial vested rights, which they were meant to protect, under the guise or form of a rule of evidence or procedure, but due process never did mean the loss by the legislative or judicial arms of government of their powers of regulation concerning the competency of witnesses or rules of evidence. See Wilson et ux. v. Wilson, 1882, 86 Ind. 472; Little v. Gibson, 1859, 39 N.H. 505; Kozler v. New York Telephone Co., 1919, 93 N.J.L. 279, 108 A. 375.

In Cushman v. Smith, 1852, 34 Me. 247, at page 257, we said: "The legislative power is left entirely free from embarrassment in the selection and arrangement of the measures to be adopted to take private property and appropriate it to public use, and to cause a just compensation to be made therefor."

The plaintiff takes nothing from the claim that her constitutional rights of due process were abridged unless the jury award is so inadequate that it fails to equate the just compensation required under our Constitution. Constitution of Maine, Art. I, § 21.

■ We recognize that the expert testimony as to the fair market value of the plaintiff's property was in sharp dis-

agreement. From the record before us, we note that it ranged from $47,800, the estimate testified to by the Authority's expert, to $123,750, the final figure stated by Mr. Hobbs, the plaintiff's value witness. Concededly, we have but a portion of the testimony reproduced for our consideration and there is no way of knowing whether the omitted evidence affected testimonial values to such an extent as to leave us with a distorted picture from what the jury had in their deliberations. It is apparent that the jury did not accept Mr. Hobbs' opinion and that they were not the least impressed by his testimony. Still, this does not mean that they disregarded it completely. To segment the influential evidence that swayed the jury in assessing a fair market value of $60,000 upon the plaintiff's property and to demonstrate the collective mental processes used by them in solving the problem at hand, is an impossibility. However, we need not do so. The competence, credibility and weight of expert testimony is exclusively the province of the jury. It may be disbelieved in part or in whole. It is not binding on the jury. Kittery Electric Light Co. v. Assessors of Town of Kittery, 1966, Me., 219 A.2d 728, at page 743. As instructed by the trial judge, the jury was not restricted to a choice between the estimates of the two warring experts and this Court as an appellate judicial tribunal cannot substitute its judgment for that of the jury in awarding just compensation in eminent domain proceedings. If the inadequacy of the award is not such as to indicate inherent taint of passion or prejudice, and is not shocking to an enlightened conscience having due regard for the constitutional mandate of just compensation, the jury verdict must stand. If there is any substantial evidence upon which the jury could have based its verdict, this court will not set aside the amount of the condemnation award. We find that there was. We are satisfied that the sum total of the evidence before the jury supports the verdict and we detect no evidence whatsoever that the jury award was brought about by reason of passion, bias or prejudice. See Farrington v. Maine State Highway Commission, 1963, 159 Me. 95, 188 A.2d 483.

The plaintiff has been awarded, within proper constitutional strictures, the just compensation to which she was entitled for the taking of her property. There is no error and the entry will be

Appeal denied.