**William L. LUCE and Frederick J. Mahoney, Jr.**

v.

**MAINE FIDELITY LIFE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Aug. 2, 1974.

---

2. Art. VI, § 3, Constitution of Maine.

Bernstein, Shur, Sawyer & Nelson by Sumner T. Bernstein, William W. Willard, Portland, for plaintiffs.

Kenneth Baird, Pierce, Atwood, Scribner, Allen & McKusick by Ralph I. Lancaster, Jr., Daniel E. Boxer, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

In calculating damages for breach of an agreement to lease several rooms designed to be used in conjunction with each other, is it an error of law to base the award on an appraisal of fair rental value arrived at by adding the estimated rental value of each room when rented separately?

The issue before us on defendant-lessee's appeal from a judgment entered against it in Superior Court may be so stated.

We sustain the appeal.

We hold that within the factual framework here before us it was error not to compute the fair rental value of the leased premises as a single unit for the purpose of fixing damages for breach of a contract to lease.

The facts of the case are not disputed.

Plaintiffs and defendant entered into an agreement to lease the property which is the subject of this litigation with the lease to commence July 1, 1971. The agreement provided that the defendant would occupy the former location of the Casco Bank and Trust Co. on Monument Square, Portland, for five years at an annual rental of $33,500.00.[1] The property consisted of about 10,000 square feet of space which was divided as follows:

(1) approximately 6,000 square feet on the second floor (the main office floor);

(2) approximately 3,500 square feet above the main floor (the mezzanine);

(3) about 500 square feet on the third floor (the former president's office).

At a hearing before the Superior Court, the parties stipulated that defendant had breached the agreement to lease.[2] They also agreed that the measure of damages should be "the difference between the rental value which was subject of the agreement to lease, and the fair market rental value of the property on the date the agreement to lease was entered into." (i. e., July 1, 1971).[3]

---

1. The agreement stated that there would be no rental charge for the first six months of the lease.

2. The defendant never occupied the premises.

3. See M. N. Landau Stores, Inc. v. Willie A. Daigle et al., 157 Me. 253, 170 A.2d 673 (1961).

In this appeal, the dispute is focused on whether that fair rental value was properly determined.

■ At trial the defendant made no formal objection to the testimony of plaintiffs' appraiser concerning the value of the leasehold as three separate units. It did, however, make its opposing position clear. There can be no question it urged a different appraisal method from that adopted by the Court. The defendant's failure to object to the admission of the opinion of the expert appraiser called by plaintiffs cannot be taken as a waiver of the right to assert before this Court that the opinion evidence on which the Court obviously relied was based upon legal principles which are unsound.

Warren v. Waterville Housing Authority, Me., 235 A.2d 295 (1967), is cited by plaintiffs as authority for its position that the defendant is now precluded from raising the claim the appraiser's opinion was based upon unsound principles.

In *Warren* the Court was concerned with the claim that the appraiser's opinion was based in part upon hearsay evidence as to alleged comparable sales. There was no objection to the admission into evidence of the hearsay.

This Court, citing Goldthwaite v. Sheraton Restaurant et al., 154 Me. 214, 145 A. 2d 362 (1958), held that such evidence received without objection was "consent evidence" and, therefore, could properly be considered by the appraiser in arriving at his conclusions.

In the case before us the appraiser and the trial Court both found the rental value of the premises on the critical date by drawing conclusions as to the fair rental value of each of three separate areas of the total proposed leasehold and adding them. The Justice below obviously accepted the estimate of rental value of the plaintiffs' expert and using that figure awarded plaintiffs $31,320.35, plus interest and costs.

The plaintiffs' appraiser determined the rental value of the premises by estimating the rental value of the main floor, the mezzanine and the president's office, were they to be rented separately and adding the three totals.

It appears that because this method was employed the fair rental value arrived at was lower (and consequently damages were higher) than it would have been had the property been evaluated as a single unit.

The resulting enlarged damage award was premised on unsound principles and must be set aside.

"Appraisal evidence arrived at through the application of erroneous principles is unsubstantial as a matter of law, even though it may appear substantial on its face." In Re: Clearview Expressway, 9 N.Y.2d 439, 214 N.Y.S.2d 438, 174 N.E. 2d 522 (1961).[4]

■ In cases and treatises dealing with the appraisal of real estate, it is often stated that the market value of property should be determined on the basis of its "best and highest use." Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236, 1244 (1934); 4 Nichols, Law of Eminent Domain, § 12.314 at 12–222, 12–231 (9th ed. 1912); 3 Sedgewick on Damages, § 11 71a at 2433 (3rd ed. 1971); Curtis v. Maine State Highway Commission, 160 Me. 262, 266, 203 A.2d 451, 453 (1964); Knox Lime Co. v. Maine State Highway Commission, Me., 230 A.2d 814, 824 (1967).

In *Curtis,* which dealt with fixing fair market value for purposes of compensating

---

4. Cited in Farrington v. Maine State Highway Commission, 159 Me. 95, 96, 188 A.2d 483, 484 (1963). See also Warren v. Waterville Urban Renewal Authority, supra, 235 A.2d at 298.

a landowner who had his property taken by eminent domain, this Court said:

"The test is the market value of the land for its best and highest use at the time of the taking or in the foreseeable future." 160 Me. at 266, 203 A.2d at 453.

And in *Knox Lime,* supra, the test was reaffirmed.

"We accept the often quoted rule that market value is the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land is adapted and might in reason be applied." 230 A.2d at 824.

■ That the case before us does not involve a condemnation proceeding and concerns fair rental instead of resale value does not sufficiently distinguish the case so as to remove it from the highest and best use requirement. The best use rule is equally applicable to the computation of damages for breach of a lease. Neal v. Jefferson, 212 Mass. 517, 99 N.E. 334 (1917).

In *Neal* a lessee sought damages for a breach by the lessor of a convenant to renew the lease. The *Neal* Court said:

"This rule [highest and best use] generally has been applied where the value of property taken for a public use is to be determined, but it is not limited to such cases [citing cases]. The value of a leasehold estate, like that of any interest, is to be determined with reference to the use to which it can be most advantageously put." 212 Mass. at 522–523, 99 N.E. at 335.

■ Of course, to be considered as the highest use to which property may be put a use cannot be unreasonble, illegal, or purely speculative. *Knox Lime Co.,* supra, at 824, 32 C.J.S. Evidence § 546, (117) at p.

440, Sedgewick on Damages, supra, at 2433.

■ The only evidence in the record concerning the point supports the conclusion that the highest and best use for the property at issue was to rent it as a single unit.

Defendant's expert testified that it would not be advantageous for the lessor to partition the property and rent it separately since the landlord could extract the highest rent from the property if he leased it as a whole.

In their complaints, plaintiffs themselves recognize the interdependence of the three leased sections. They characterize the premises as "unique" and state that it "cannot be partitioned without making major structural changes." Further, plaintiffs' expert testified that the three floors had a "special purpose" as they were designed especially for use by the Casco Bank.

He also stated that the mezzanine was intended to be used in conjunction with the second floor, and that it was relatively narrow and had restricted public access.

Finally, the lease agreement itself in which the parties treated the 10,000 square feet as a single parcel to be rented at one rental rate, is evidence that leasing the property as a unit constituted its most advantageous use.

Since they were based on the rental value of each parcel taken alone, plaintiffs' appraisal figures did not represent the fair rental value of the property in question in light of its highest and best use.

The Justice below was in error when he accepted those figures and used them to compute plaintiffs' damages.

Therefore the entry must be,

Appeal sustained.

WERNICK, J., did not sit.

All Justices concurring.